McKinney, J.,
delivered the opinion of the court.
This was an action of ejectment in the circuit court of Claiborne. The bill of exceptions presents the following state of facts. John Gray, the father of the plaintiff’s lessor, (who departed this life about the year 1821,) was seized and possessed of the tract of land described in the declaration. By his last will and testament, he disposed of said tract of land to his wife, during widowhood; and upon her marriage’ then to be equally divided between her and all his children. About two years after the testator’s death, his widow intermarried with one Edmund Collins. In 1829, Collins, by deed in fee simple, conveyed said tract of land to one Nathan Perry; who, in like manner, in 1831, conveyed to Luke Perry; and the latter, on the 3d September, 1832, sold and conveyed the same to Norvell, the plaintiff in error, by deed purporting to convey an estate in fee simple, who has ever since held adverse possession of said tract of land.
This action was commenced by Lucy Ann Gray, one of the testator’s daughters, in December, 1844, and more than three years after she had arrived at the age of twenty-one years.
It appears, that within the period of three years after her majority, and during the temporary absence of Norvell beyond the limits of this State, the lessor of the plaintiff entered upon and took possession of part of the premises in dispute (the family of Norvell still continuing in possession, as before,) and *102 so continued in possession until Norvell’s return, when he immediately caused her to be dispossessed by legal process.
The jury, under the charge of the court, found a verdict in favor of the lessor; upon which, judgment was rendered for one eighth part of the land described in the declaration. A new trial was refused, and the defendant below appealed in error to this court.
The error mainly relied upon in argument here, is in the following instruction of the court to the jury, namely: that “if within the period of three years after she, (the lessor of the plaintiff,) came of age, she got peaceably into possession of the land, and was afterwards turned out, she would not be barred until seven years from the time she was so turned out of possession.”
■This proposition, we think, is not law. It assumes/ one of two conclusions; either that the entry, under the circumstances had the effect to neutralize the adverse possession of Norvell, and arrest the operation of statute of limitations in totoj or, that it had, in law, all the effect of a “suit in law or equity effectually prosecuted.” Both of which conclusions are wholly erroneous, as applied to the facts of the particular case under consideration. And in case of an entry, by the mere act of the party, there are perhaps but two predicaments in reference to which the principle ■ asserted in the foregoing instruction would be at all correct. The first, where the possession was vacant at the time the entry was made; the second, where the person, previously in possession, by acquiesence or otherwise, so far recognized the possession and right of the individual making the entry, as to convert his own previous adverse possession into a possession subordinate to the title of the former.
In either of these cases, the effect would be to give the party full and exclusive seisin of the entire premises. And the seisin, or possession, being united with the right of prop- *103 ert3r, his-, title would be complete. And such being the effect, there would be no .reason or necessity for putting the party making the entry to an action — if indeed it were possible in either case to maintain an action — for by the act of entry he would have acquired all that a suit' effectually prosecuted could have vested him with.
But in the case under our consideration, the entry of the lessor was only into part of the tract in dispute; it worked no ouster or change, either in point of law or fact, of the possession previously held by Norvell; it was not assented to, or acquiesced in by him; it was not a peaceable entry, in the legal sense; but on the contrary, was forcible, illegal, and therefore of no validity or effect for any purpose.
A peaceable entry, does'not mean one merely unaccompanied with actual violence, or broach of the peace. In law, every entry upon the soil of another; in the absence of a lawful authority, without the owner’s license, is a trespass. And it matters not that there was no actual force, for the law implies force, and damage likewise, in every unauthorized en • try, or trespass guare clausum fregit. 3 Bl. Com. 209; 1 Chitty Pl. 125.
It is clear also, that even if the lessor had entered by the consent of the wife or family of Norvell, in his absence, (the contrary of which, however, is indicated by the proof,) such entry would have been no less unauthorized, and no less forcible, in legal contemplation, because the wife or family had no power to give any such consent. But the illegal character of the entry is conclusively established by the fact disclosed in the proof, that the lessor was dispossessed by due process of law, set on foot by Norvell immediately upon his return home.
The entry being, therefore, illegal, was a nullity, and could have no effect to vest the lessor with a seisin of any part of *104 the tract of land in controversy; neither could it have any effect upon the operation of the statute of limitations.
It is apparent, therefore, from, the foregoing view of the ease, that if the instruction of the court were admitted to be ■correct, it is wholly inapplicable to the facts of the case; and that the verdict, so far from being supported by the evidence, is in direct opposition to it. For this reason the judgment must be reversed. And here we might well enough leave the case.
But it has been suggested — and such must have been the view of the circuit Judge — that the right of entry, as it existed at common law, exists here; and that it should be allowed the same effect, under our statute of limitations of 1819, as under the act of 21, James 1, ch. 16 This is an erroneous conclusion.
An entry upon land, of which another, without any right has taken possession, is one of the methods ordained by the common law for the redress of private injuries, by the mere act of the party injured; of the same kind as the right of re-caption for injuries to personal property. 3 Bl. Com. 5. 175.
When one having no right had taken possession of the land or tenements of another, the legal owner might make a formal, but peaceable, entry therein, declaring that thereby he took possession, and this notorious act of ownership was deemed equivalent to a feudal investiture by the lord. Or, if deterred from entering by. menaces or force, he might make claim as near to the estate as practicable. And such claim, repeated once in the space of every year and a day, (which is called continual claim) had the same effect, in all respects, as a legal entry. Such an entry gave a seisin, or put into immediate possession him that had right of entry on the estate; and thereby made him capable of conveying the estate from himself, either by descent or purchase; and likewise prevented his right of possession from being barred: provided the en *105 try were made within twenty years from the time the right accrued — that being the period‘limited by the act 21, James 1 — and provided also that, within one year after such entry, an action were commenced and prosecuted with eifect, as required by statute 4-5, Ann. chap. 16: 3 Bl. Com. 175, 178.
But this right of entry, by the act of the party, existed only in those cases of ouster where the possession had been unlawfully taken originally by the wrongdoer, as in abatement, intrusion, and diseisin. It did not exist in cases where the person in possession had entered lawfully, or had gained an apparent right of possession; as upon a discontinuance or de-forcement; in which cases the claimant was driven to a suit of entry, or other possessory remedy, to recover the possession. So likewise the claimant was put to his suit of entry if, upon a legal entry being actually made, the wrongdoer continued in possession. For as the claimant could not enter by force, neither could he, after a peaceable entry, by force, or strong hand put the wrongful possessor out: this by statute 5, Rich II, was an injury of both a civil and criminal nature.
From the foregoing principles, applicable to this species^,of private remedy, it is clear, that even if it existed in this state, it could not be resorted to in a case like the present; because the possession of Norvell was not unlawful. He entered into possession under a conveyance purporting to vest him with the fee simple' and was let in by one professing to hold in fee. He had acquired at least an apparent right of possession, and was placed fully within the scope and operation of the first section of the act of 1819.
But, be this as it may, we are of opinion that this mode of private redress, by entry — if it previously existed — under the statutes of limitation of 1715, and 1797, (a question upon which we need express no opinion) is taken away bv the express and positive terms of the act of 1819. The latter statute declares, that any person or persons who shall neglect, *106 or who shall have neglected, for the said term of seven years, to avail themselves of the benefit of any title, legal or equitable, which he, she, or they may have to-any lands, tenements, or hereditaments, within this State, by suit in Jaw or equity, effectually prosecuted against the person or persons, so as aforesaid in possession, shall be forever barred.
Now, it is a universal principle in the construction of statutes of limitation, that the rights of all persons are barred unless they fall within some of the specific exceptions, or disabilities, expressly mentioned in the statute. The general words of the statute must receive a general construction; and cases falling within the letter, cannot be exempted from its operation by judicial construction. Angel on Lim., 204, 518. So far as the statute has omitted to make express exceptions, the courts can make none. It is equally well settled, that when the statute has once attached and begun to run, its operation cannot be suspended or arrested, except in the mode, or for the cause, expressly declared in the statute.
The act of 1819' — as we have seen — provides but one single method by which the bar of the statute may be suspended, namely: by a suit in law or equity, effectually prosecuted against the person or persons in possession. And neither by entry, nor in any other mode, can the operation of the statute be arrested.
We think the manifest design of the act of 1819, was to exclude the remedy by entry, as it existed at the common law. The statute was intended to preserve the peace and repose of the community. To put a stop to litigation respecting dormant titles, as well as to the struggles of individuals to redress their injuries by their own acts — a policy certainly not to be discouraged by the courts.
But, in holding that an entry, as a remedy to regain seisin of an estate, by the mere act of the pai'ty, cannot have the effect under the act of 1819, as at common law, we are not *107 to be understood as intimating that an entry, by the rightful owner, upon lands adversely held, within seven years, if acquiesced in, will have no legal effect. Upon general principles, we think it may have the effect to give such owner a legal seisin, at least to such part of the land as he may be able to acquire the peaceable and exclusive possession of; and as against a wrongful possessor — although he may be in under an invalid or inferior assurance, purporting to convey an estate in fee simple — we incline to the opinion that, possibly, such entry would give the owner seisin, as far forth as the wrongful possessor had not actual possession. Both having an actual possession and occupation of different parts of the same tract, and each claiming an exclusive right, the one under a valid, and the other under an invalid title; which shall be regarded as having the possession of such part of the tract as may not be actually occupied by either? Will not the law, in such case, as in other cases of a mixed or concurrent possession, adjudge the seisin to be according to the title, as far as there exists no actual adverse possession? But in the case put, it is clear, that as such entry of the legal owner would be no ouster of the actual possession of the wrongdoer, it could not have the effect to neutralize such adverse possession, or to suspend the operation of the statute of limitations, as to the part actually occupied by the wrongful possessor.
The judgment will be reversed, and the cause be remanded for a new trial.