IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 10, 2014 Session

## CITY OF TOWNSEND v. ANTHONY DAMICO

Appeal from the Circuit Court for Blount County
No. L-18244    David R. Duggan, Judge

_____

No. E2013-01778-COA-R3-CV-FILED-MAY 27, 2014

_____

This appeal presents the issue of whether the City of Townsend ("the City") properly issued a citation for trespass to the defendant, Anthony Damico, when he exited the Little River onto private property in order to avoid crossing a dam on his inner tube. The Townsend Municipal Court upheld the citation and issued Mr. Damico a fine. Mr. Damico appealed to the Blount County Circuit Court for a trial *de novo*. The circuit court held that Mr. Damico had a right to portage around the dam and that he was denied this right when he was confronted by an agent of the private property owner. The circuit court further held that Mr. Damico did not engage in trespass when he traversed private property because he was seeking to avoid further confrontation, which the court found constituted justifiable cause. Therefore, the circuit court dismissed the citation. The City of Townsend appeals. We reverse and remand for reinstatement of the trespassing citation and fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

William J. Carver and Camille H. Sanders, Knoxville, Tennessee, for the appellant, City of Townsend.

Joe Nicholson, Maryville, Tennessee, for the appellee, Anthony Damico.

**OPINION**

## I. Factual and Procedural Background

The essential facts in this case are not in dispute. On June 23, 2012, Mr. Damico and several of his friends were "tubing" on the Little River in Townsend. There are several businesses in Townsend that rent inner tubes to individuals for recreational use on the Little River, including the entity that rented the inner tube to Mr. Damico, Smoky Mountain River Rat. As much of the Little River flows along privately owned land, this business and all similar enterprises are required to provide and identify for their rental customers the location of designated egress points in the river. Smoky Mountain River Rat also informs its customers that all property along the river is private. Upon exit at any designated egress point, the tubing customers are transported back to the respective business facility and their parked vehicles.

During their journey, Mr. Damico and his friends floated past the final designated point of egress for Smoky Mountain River Rat patrons before encountering a small dam known as Wears Dam. In order to avoid the dam, which they believed to be unsafe to traverse, Mr. Damico and friends either had to paddle or swim back upstream to the nearest egress point or exit the river. The group chose to exit the river onto private property at the Ye Olde Mill Campground, despite the presence of signs indicating "private property" and "no trespassing," in order to avoid Wears Dam. Before leaving the river, Mr. Damico was confronted by Robert Williams, the manager of Ye Olde Mill Campground, who informed Mr. Damico that the campground was private property and that Mr. Damico could either pay a nominal fee to remain on campground property or return to the river. Mr. Damico, having carried no money with him, refused to pay the fee. As the conversation continued, it became somewhat combative. At trial, Mr. Damico admitted that he used profanity in the presence of campground patrons. Mr. Damico and his friends eventually crossed the campground property by foot and proceeded to a public sidewalk bordering Highway 321. Once they had traveled past the dam, the group returned to the river.

The owner of the campground soon called the Townsend Police Department and reported a trespass. The officer dispatched to investigate the incident found Mr. Damico and his friends in the Little River and ordered that Mr. Damico exit the river and answer questions. As Mr. Damico apparently admitted that he had entered the campground property, the officer issued him a citation for trespassing.

The Townsend Municipal Court heard the case on December 6, 2012, and upheld the citation, issuing Mr. Damico a fine. Mr. Damico appealed to the Blount County Circuit Court. Upon hearing, the circuit court dismissed the trespass citation, finding that (1) the

Little River is a navigable waterway in the legal sense and (2) users of the Little River have a right to portage around waterway obstacles. The court concluded that Mr. Damico was denied his right to portage when he was confronted by an agent of the private property owner. The circuit court further held that Mr. Damico did not engage in trespass when he traversed private property because he was seeking to avoid further confrontation, which the court found constituted justifiable cause. Accordingly, the circuit court dismissed the citation. The City timely appealed.

## II. Issues Presented

The City presents the following issues for our review, which we have restated slightly:

1.      Whether the trial court erred by finding that Mr. Damico had justifiable cause to trespass and dismissing the trespass citation on that basis.

2.      Whether the trial court erred by holding that the Little River through Townsend is a navigable waterway in the legal sense.

## III. Standard of Review

Our standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

## IV. Trespass

The dispositive issue in this case is whether Mr. Damico engaged in trespass by violating Townsend Municipal Code § 5-111.[1] The trial court, *inter alia*, found the following with regard to the alleged trespass:

> This Court has ruled that Little River is navigable water of the United
> States in the legal sense, and that recreational users of the River have a right
> of portage to proceed onto private property in order to go around obstructions
> and obstacles in the water. Because, however, Mr. Damico did not portage

---

[1]Cases involving violation of a city ordinance are civil in nature, "having as their object the vindication of domestic regulations." *Metro. Gov't of Nashville & Davidson Cnty. v. Allen*, 529 S.W.2d 699, 707 (Tenn. 1975).

around the dam, but rather walked directly across the property to a public sidewalk and road, it could still be said, and indeed the Townsend Municipal Court held, that he trespassed on the property by taking that route across the property.

. . .

[T]respass must be an intentional harm. If there is no intentional act–in the sense of an act voluntarily done–there is no trespass. *Kite v. Hamblen*, 192 Tenn. 643, 241 S.W.2d 601 (1951); 24 Tenn. Juris. *Trespass* §2.

Other cases hold that one need not show malice or wrongful intent if the alleged act of trespass is done without justifiable cause. *McQueen v. Heck,* 41 Tenn. (1 Cold.) 212 (1860)*; see, Luttrell v. Hazen*, 35 Tenn. (3 Sneed) 20 (1855).

There is no dispute in this case that Mr. Damico and his party were floating the Little River on June 23, 2012, they did not egress the River at the point they were supposed to, and then they observed the dam spanning the River. There is no dispute that it was because of the dam that the tubers entered onto the private property of the Campground. A verbal altercation ensued which became heated. While this Court has held that Mr. Damico and the group had a right to proceed around the dam and re-enter the River, they chose not to do that. Rather, they walked directly across the property to a road which allowed them to walk to the public sidewalk on Highway 321. Then, they turned and walked along the public road parallel to the River and eventually re-entered the River.

Mr. Damico testified that he had no intention to trespass upon Campground property, but that he considered going onto the property, in order to portage around the dam, to be his only option. He further testified that the reason he did not proceed around the dam, but rather took the route to the public sidewalk on Highway 321, was because of the confrontation and in order to take the most direct route to the public sidewalk that he could take, while avoiding further confrontation. [internal citation]

Certainly he was denied his right of portage.

Accordingly, the Court finds that, under the specific facts of this case, Mr. Damico did not engage in a trespass when he crossed Campground

property. While he testified that he did not intend to trespass, but rather was seeking the most direct route to the public property without further confrontation, to the extent his decision was an intentional act, nevertheless the act was engaged in with justifiable cause. Accordingly, the Court holds that there was no trespass.

The court then dismissed the trespass citation.

> The Townsend Municipal Code § 5-111 defines "trespassing," in pertinent part, as:
>
> The owner or person in charge of any lot or parcel of land or any building or other structure within the corporate limits may post the same against trespassers. It shall be unlawful for any person to go upon any such posted lot or parcel of land or into any such posted building or other structure without the consent of the owner or person in charge.

There was no dispute in this case that there existed multiple "no trespassing" signs posted on the campground property, which were visible from the river.

The courts of this state have similarly defined the tort of trespass as an unauthorized entry upon the land of another. *See Norvell v. Gray's Lessee*, 31 Tenn. 96, 103 (1851) ("In law every entry upon the soil of another, in the absence of a lawful authority, without the owner's license, is a trespass."). Contrary to the trial court's holding, in a case involving trespass, the defendant's intent to trespass or knowledge that he is trespassing is immaterial. *See McQueen v. Heck,* 41 Tenn. 212, 215 (1860)*; Luttrell v. Hazen*, 35 Tenn. 20, 23 (1855); *Miles v. Huff's Foodtown, Inc.*, No. 85-158-II, 1986 WL 1786 at *5 (Tenn. Ct. App. Feb. 11, 1986).

The trial court relied upon our Supreme Court's opinion in *Kite v. Hamblen*, 241 S.W.2d 601, 603 (1951), a case that involved "assault and battery which was a trespass vi et armis (striking plaintiff with fists)," rather than trespass upon property. In *Kite*, the Court stated, "[t]respass is an intentional harm, and where there is no intentional act, in the sense of an act voluntarily done, there is no trespass." *Id.* As explained in 75 AM. JUR. 2d Trespass § 5 (2014):

> The controlling issue is the intent to complete the physical act, regardless if, in so acting, the actor did not intend to commit a trespass and acted in good faith. Although it is not necessary that the trespasser intend to invade the property, commit a trespass, or even know that the act will constitute one, it is required that there be an intent to do the act that results in the trespass.

Mr. Damico testified that he exited the river and crossed campground property, which he knew to be private, in order to reach a public road. His intent in doing so is relevant only inasmuch as he voluntarily entered the property, as opposed to being, for instance, washed upon the property by the river. Mr. Damico conceded that the distance would have been shorter to simply walk around the dam and immediately return to the water. He stated, however, that he "did not want to continue walking on the property" and "wanted to get off their property as soon as I could." The photographs admitted into evidence demonstrate that there were no physical obstructions preventing Mr. Damico from utilizing the shortest route to simply walk around the dam. Further, there is no evidence that Mr. Damico was physically obstructed by the owner's agent, Mr. Williams. Mr. Williams testified that he was sitting at a picnic table speaking to Mr. Damico, who was still in the water, when Mr. Damico "got out and went on up to the road, and his friends followed him."

There is no dispute in this cause that Mr. Damico entered upon the land of another without consent. His lack of intent to trespass is of no consequence. The fact that he thought his route in crossing the property would somehow avoid confrontation is also not dispositive. Mr. Damico did not merely walk around the dam and return to the water. Rather, he traversed private property without permission, away from the river, to arrive at a public road. Whether he intended to trespass or not, Mr. Damico entered onto the land of another without the owner's consent. Therefore, the trial court erred in dismissing the citation for trespass. The trial court's additional findings regarding portage and justifiable cause will be discussed below.

## V. Navigable Waterways and Portage

In its Final Judgment, the trial court stated that counsel for both parties agreed that an issue to be adjudicated was whether the Little River constituted a navigable waterway. The City argues that the trial court erred in its determination that the Little River is a navigable waterway. There are two types of navigable waterways in Tennessee: (1) those that are navigable in the legal sense and (2) those that are navigable in the ordinary sense. As our Supreme Court explained over 100 years ago:

> If the river be a public, navigable stream in the legal sense, the soil covered by the water, as well as the use of the stream, belongs to the public. But if it be not navigable in the legal meaning of the term, the ownership of the bed of the stream is in the riparian proprietor, but the public have an easement therein for the purpose of transportation and commercial intercourse. A distinction is taken by the common law between streams which in the common acceptation of the term are suited to some purposes of navigation and small shallow streams which are not so. In respect to the former,-which, though not

navigable in the sense of the law, are yet of sufficient depth naturally for valuable floatage, as for rafts, flatboats, and perhaps small vessels of lighter draught than ordinary,-while it is settled that the right of property in the bed of the stream is vested in the riparian proprietor, and in that respect it is to be regarded as a private river, still it is equally well settled that the public have a right to the free and uninterrupted use and enjoyment of such stream for all the purposes of transportation and navigation to which it is naturally adapted.

*Webster v. Harris*, 69 S.W. 782, 784 (Tenn. 1902). Therefore, if the Little River is navigable in the legal sense, the public owns the waterway and the soil beneath it. *Id.* Should it be classified as navigable in the ordinary sense, the adjoining property owners own the land beneath the waterway to the low-water mark, with the public maintaining an easement to use the waterway. *Id.*; *see also City of Murfreesboro v. Pierce Hardy Real Estate, Inc.*, No. M2000-00562-COA-R9CV, 2001 WL 1216992 at \*10 (Tenn. Ct. App. Oct. 12, 2001).

The trial court concluded that the Little River was navigable in the legal sense. The court also made a determination that alternatively, should the river be navigable only in the ordinary sense, the public had an easement for transportation and commercial intercourse thereon, including recreational use. The trial court further determined that Mr. Damico had a right to portage around the dam, which the court defined as "the right of an individual to utilize private land to pass by an obstacle in or along the waterway, and it refers to a limited privilege the user/navigator has to go onto adjoining private land to scout, and, if necessary, make a safe, reasonable portage."

Following a thorough review of the evidence, we conclude that the trial court was not obligated to make determinations regarding whether the Little River was navigable in the legal or ordinary sense or whether Mr. Damico had a right to portage around the dam. The navigability of the river is not properly at issue in this case because Mr. Damico's conduct extends beyond mere use of the flowing water and the soil beneath it. The uncontroverted evidence established that Mr. Damico exited the river, entered private property posted "no trespassing," and without consent of the owner traversed the campground property in order to reach a public road. Further, authority has not been shown to exist in Tennessee for holding that navigability of the river has distinct bearing upon the issue of whether Mr. Damico maintained a right to portage around the dam. We conclude that the trial court erred in reaching this question and hereby pretermit the issue as moot.

Likewise, the issue of whether Mr. Damico maintained a right to portage around the dam is not dispositive in this case. The trial court found that portage involves a "limited privilege" of the river's user to "utilize private land to pass by an obstacle." While this concept has never been defined in Tennessee case law, other jurisdictions have held that

when users of a waterway encounter obstacles, the users can circumvent those obstacles by utilizing the most direct route that does not damage private property. *See Montana Coal. for Stream Access, Inc. v. Curran*, 682 P.2d 163, 172 (Mont. 1984) ("the public is allowed to portage around such barriers in the least intrusive way possible, avoiding damage to the private property holder's rights." ); *Adirondack League Club, Inc. v. Sierra Club*, 706 N.E.2d 1192 (N.Y. 1998)(holding that despite the right to portage around an obstacle on riparian lands, any use of private river beds or banks that is not strictly incidental to the right to navigate gives rise to an action for trespass).

The sole issue for the trial court to adjudicate in this action was whether Mr. Damico was properly issued a citation for trespassing on private property. The undisputed facts show that Mr. Damico did not merely carry his inner tube around the dam, utilizing the most direct route that was least harmful to the private landowner. Rather, after being approached by the owner's agent, Mr. Damico proceeded to walk across the private property without permission to access and use the public road beyond it. Therefore, as the trial court properly found, Mr. Damico did not merely "portage" around the dam. We conclude that the issue of portage is also pretermitted as moot.

The trial court found that Mr. Damico's right to portage and the landowner's "denial" of same constituted "justifiable cause" to excuse Mr. Damico's trespass. The court based its analysis on *McQueen*, 41 Tenn. at 215, wherein our Supreme Court stated:

> In trespass it is not necessary for the plaintiff to show that the act was done of malice, or any wrongful intent; so far as the right to maintain the action is concerned, it is sufficient if it were done without a lawful or justifiable cause, though it may have been done accidentally or by mistake.

*McQueen* concerned the issue of whether a sheriff, in acting upon an invalid capias warrant, was liable to the plaintiff for trespass. *Id.*

Our research has uncovered no other Tennessee case utilizing the language of "justifiable cause" in regard to a civil trespass. We do generally observe, to the extent pertinent to the specific facts under review, that a defense of private necessity exists to a charge of criminal trespass, as our Court of Criminal Appeals has explained:

> Necessity is a defense wherein conduct, otherwise unlawful, is justified if: "(1) The person reasonably believes the conduct is immediately necessary to avoid imminent harm; and (2) The desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct." Tenn. Code Ann.

§ 39-11-609. The Sentencing Commission Comments to this section state that the defense of necessity is applicable in exceedingly rare situations where criminal activity is "an objectively reasonable response to an extreme situation." The Sentencing Commission provides an example as follows: "[T]he necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open."

*State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998). In Tennessee jurisprudence, this is the only form of "justifiable cause" that could be applicable to the factual circumstances at bar.

We conclude that the facts of this case do not establish any type of justifiable cause or private necessity for Mr. Damico's actions. While it is true that Mr. Damico was verbally instructed by the agent that he could not come onto the campground property without paying a $2.00 fee, Mr. Damico was not obstructed from circumventing the dam on foot by utilizing the most direct route. Had Mr. Damico merely walked around the dam and returned to the river, this Court would undertake a different analysis. Here, Mr. Damico chose to cross private property without consent and walk to the public road. This course was not the most direct route and did not have the least impact on the private landowner. Given these facts, the trial court erred in finding that Mr. Damico had justifiable cause to commit a trespass.

## VI. Conclusion

For the reasons stated above, we reverse the trial court's judgment and remand for reinstatement of the trespassing citation and fine. Costs on appeal are assessed to the appellee, Anthony Damico.

_____
THOMAS R. FRIERSON, II, JUDGE