IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 5, 2021 Session

## ELTRICIA LAREE COOK v. GARY LYNN FUQUA ET AL.

**Appeal from the Circuit Court for Macon County**
**No. 56CC1-2019-CV-107      Clara W. Byrd, Judge**

_____

### No. M2021-00107-COA-R3-CV

_____

A woman sued a homeowner for negligence due to injuries she sustained when a pot-bellied pig maintained on the homeowner's property jumped on her and knocked her off of the homeowner's front porch. The homeowner filed a motion for summary judgment arguing that he did not owe the woman a duty of reasonable care because she was a trespasser. The trial court granted the motion for summary judgment, and the woman appealed. Determining that genuine issues of material fact still exist because the homeowner failed to establish that the woman was a trespasser, we reverse the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

Aldo J. Stolte, Nashville, Tennessee, for the appellant, Eltricia Laree Cook.

Arthur Edward McClellan, Gallatin, Tennessee, for the appellee, Gary Lynn Fuqua.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Gary Lynn Fuqua owns real property in LaFayette, Tennessee where he resided with his wife, Lisa Fuqua, and his adult step-son, James Allen Tipton. Mr. Tipton owned two pot-bellied pigs that Mr. Fuqua permitted him to keep in a fenced-in area on the property. On October 12, 2018, the pigs began running at large after Mr. Tipton intentionally released them from the fenced-in area. Mr. Fuqua was not on the property that day and, in fact, had

not been there in approximately a month due to an order of protection being issued against him that prohibited him from coming onto the property.

Around the time that Mr. Tipton released the pigs from the fenced-in area, Eltricia Laree Cook was visiting her father, who lived across the street from Mr. Fuqua. Ms. Cook heard a loud noise coming from her father's storm door and went to investigate the source of the noise. Upon reaching the door, she discovered that the pigs had wandered across the street and onto her father's property; she believed one of the pigs had caused the loud noise by jumping against the storm door.

Ms. Cook herded the pigs back onto Mr. Fuqua's property and went onto his front porch to knock on the door and inform him or Mr. Tipton that the pigs were running at large. One of the pigs, Baxter, followed her up onto the porch. While Ms. Cook was knocking on the door, Baxter jumped against her back, causing her to fall off of the porch.[1] She sustained personal injuries in the fall.[2]

Ms. Cook filed a complaint against both Mr. Fuqua and Mr. Tipton[3] on September 18, 2019, alleging that she was injured as a result of their negligence in permitting the pigs to run at large. Although Mr. Fuqua did not own the pigs, Ms. Cook alleged that he was liable for her injuries because he knew prior to the incident that the pigs "got out of the fence often" but did nothing to remedy the situation. Following discovery, Mr. Fuqua filed a motion for summary judgment arguing that Ms. Cook was a trespasser and, as such, he merely owed her a duty "to not cause her injury intentionally, with gross negligence, or by willful and wanton conduct." Because Ms. Cook failed to allege that he acted intentionally, engaged in gross negligence, or willfully or wantonly caused her fall, Mr. Fuqua asserted, she failed to establish that he breached a duty owed to her.

After hearing the matter, the trial court entered an order granting summary judgment to Mr. Fuqua. The court concluded that he was entitled to summary judgment because Ms. Cook "was a trespasser as that term is defined by Tennessee Code Annotated § 29-34-208(a)(2); and the Complaint does not allege: that [Mr. Fuqua] was guilty of gross negligence; that he intentionally caused the fall; and/or that he willfully and/or wantonly caused the fall." Thereafter, Ms. Cook filed a motion to alter or amend the judgment to make it a final order, which the trial court granted.

On appeal, Ms. Cook presents one issue for our review: whether the trial court erred in granting summary judgment to Mr. Fuqua.

---

[1] Mr. Fuqua testified that the pigs weighed approximately "40 or 50 pounds" at the time of the incident.

[2] It is unclear from the record what specific injuries Ms. Cook suffered in the fall.

[3] Mr. Tipton failed to file an answer or appear in the trial court. He is not a party to this appeal.

STANDARD OF REVIEW

We review a trial court's summary judgment determination de novo, with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). This means that "we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Id.* We "must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *see also Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434, at *4 (Tenn. Ct. App. June 3, 2019).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. A disputed fact is material if it is determinative of the claim or defense at issue in the motion. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). When a party moves for summary judgment but does not have the burden of proof at trial, the moving party must submit evidence either "affirmatively negating an essential element of the nonmoving party's claim" or "demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. Once the moving party has satisfied this requirement, the nonmoving party "'may not rest upon the mere allegations or denials of [its] pleading.'" *Id.* at 265 (quoting TENN. R. CIV. P. 56.06). Rather, the nonmoving party must respond and produce affidavits, depositions, responses to interrogatories, or other discovery that "set forth specific facts showing that there is a genuine issue for trial." TENN. R. CIV. P. 56.06; *see also Rye*, 477 S.W.3d at 265. If the nonmoving party fails to respond in this way, "summary judgment, if appropriate, shall be entered against the [nonmoving] party." TENN. R. CIV. P. 56.06. If the moving party fails to show he or she is entitled to summary judgment, however, "'the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

ANALYSIS

Ms. Cook's claim is one of negligence. To establish prima facie proof of negligence, a plaintiff must prove five essential elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Biscan v. Brown*, 160 S.W.3d 462, 478 (Tenn. 2005). This case concerns the duty element. The existence of a duty is a question of law. *Id.* The trial court concluded that Mr. Fuqua owed Ms. Cook no duty of care "except to refrain from willfully,

with negligence so gross as to amount to willfully, intentionally, or wantonly causing [her] injury" because she was a trespasser at the time of the incident. Tenn. Code Ann. § 29-34-208(b). Therefore, in analyzing this issue, we must first consider the definition of a trespasser.

More than one hundred and fifty years ago, our Supreme Court defined "trespass" as "every entry upon the soil of another, in the absence of a lawful authority, without the owner's license." *Norvell v. Gray's Lessee*, 31 Tenn. 96, 103 (Tenn. 1851); *see also State v. Christensen*, 517 S.W.3d 60, 76 (Tenn. 2017). The General Assembly codified this definition in 2012 with the adoption of Tenn. Code Ann. § 29-34-208(a)(2), which defines "trespasser" as "a person who enters or remains on the real property of another without actual or implied permission, or a person who engages in conduct that constitutes a criminal trespass offense under [Tenn. Code Ann. §§ 39-14-405 to -407]." Relying on this definition, the trial court found that Ms. Cook was a trespasser because Mr. Fuqua had not given her permission, actual or implied, to come onto the property.

Ms. Cook does not dispute that Mr. Fuqua did not, at any time, give her actual permission to enter onto the property. Instead, she contends that the trial court erred in finding that she was a trespasser because she had Mr. Fuqua's implied permission to come onto the property. We agree. Consent to go onto another person's property "may be implied from custom, usage and conduct." *State v. Walker*, C.C.A. No. 41, 1989 WL 100825, at *2 (Tenn. Crim. App. Sept. 1, 1989). For example,

> the custom in this country is for a person to enter the premises of another for a lawful purpose without first obtaining express consent. The entry may consist of using the driveway for a vehicle, walking to a door of the dwelling and ringing the doorbell; or it may consist of similar appropriate use of the premises outside of the dwelling in connection with contacting the occupant. In the absence of an indication such an entry is prohibited[,] the visitor has the occupant's implied consent and is not a trespasser.

*Id.* Moreover, a landowner's consent or permission may be implied in the following circumstance:

> when the owner's conduct would warrant a reasonable person to believe that the owner had given consent to enter the premises, even in the absence of an invitation to enter. For instance, one who engages in a conversation with an entrant and does not ask that person to leave may not later complain about a trespass.
>
> The landowner's knowledge of the entries and of the trespassers' resulting behavior is a key factor. Actual willingness to allow entry may be

inferred from inaction in the face of a prior entry, but only if the owner had actual knowledge of the trespasser's intention to enter.

75 AM. JUR. 2D *Trespass* § 76 (2021) (footnotes omitted).

According to Ms. Cook, she went onto the property in connection with contacting either Mr. Fuqua or Mr. Tipton about the pigs running at large. Nothing in the record indicates that Mr. Fuqua prohibited such an entry. Indeed, Mr. Fuqua testified that Ms. Cook had been on his property prior to the date of the incident, and he admitted that he did not object to her being there on that prior occasion. In light of Mr. Fuqua's inaction after the prior entry, it may be implied that Ms. Cook had his permission to come onto the property on the day of the incident. We, therefore, conclude that the trial court erred in determining that Mr. Fuqua established that Ms. Cook was a trespasser and that he merely owed her the limited duty of care set out in Tenn. Code Ann. § 29-34-208(b).[4]

What duty of care then, if any, did Mr. Fuqua owe to Ms. Cook? Because "prior court decisions and statutes have already established the doctrines and rules" governing duty determinations, "the presence or absence of a duty is [generally] a given rather than a matter of reasoned debate, discussion, or contention. *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 365 (Tenn. 2008). For instance, our Supreme Court has held that a defendant ordinarily owes a duty to protect a plaintiff against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). A risk is unreasonable "if the foreseeable probability and gravity of the harm posed by the defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* Tennessee courts have also held that premises owners have a duty "to maintain the premises in a reasonably safe and suitable condition" by "either removing or warning against any latent dangerous condition on the premises of which [the premises owners] were aware or should have been aware through the exercise of reasonable diligence." *Eaton v. McLain*, 891 S.W.2d 587, 593-94 (Tenn. 1994). Regarding domesticated animals, we have previously stated that the owner owes the following duty of care:

> The owner of a domesticated animal may be held liable for the harm the animal causes if he or she negligently failed to prevent the harm. Thus, the owner of a domesticated animal must exercise such reasonable care to prevent the animal from injuring another as an ordinarily careful and prudent person would exercise under the same circumstances. The owner cannot permit the animal to run at large and cannot knowingly or negligently permit the animal to escape and fail to make reasonable efforts to capture it.

---

[4] In connection with the trespass issue, Ms. Cook makes an agency theory argument in her appellate brief. Because we have determined that Mr. Fuqua failed to establish that she was a trespasser, this issue is pretermitted.

*Stinson v. Carpenter*, No. 01A01-9601-CV00036, 1997 WL 24877, at *4 (Tenn. Ct. App. Jan. 24, 1997) (citations omitted); *see also* Tenn. Code Ann. §§ 44-8-109 to -110 (requiring that owners of "notoriously mischievous stock, known to be in the habit of throwing down or jumping fences" keep such livestock confined on their premises or suffer liability for damages to enclosure or crops of another); *McElroy v. Carter*, No. M2005-00414-COA-R3-CV, 2006 WL 2805141, at *4 (Tenn. Ct. App. Sept. 29, 2006) (stating that "as a general rule, where an owner of animals negligently allows them to run at large, he or she is liable for damages caused by that negligence").

Mr. Fuqua argues that he did not owe Ms. Cook a duty of reasonable care because it is undisputed that he did not own the pigs and that he had not been "in possession" of the premises for approximately a month prior to the incident due to the order of protection. The parties have not cited to any Tennessee cases directly on-point with these facts, and this Court is unaware of any. The facts of this case, however, share some similarities with cases involving a landlord who leases property to a tenant who maintains a vicious dog on the property. Therefore, we look to those cases for guidance in determining whether the risk of harm from the pigs running at large was an unreasonable risk that gave rise to Mr. Fuqua owing a duty of reasonable care to Ms. Cook. In those cases, although the landowner/landlord does not own the animal nor does he or she have possession of the leased property, the landowner/landlord may be held liable for the acts of the animal if he or she "had knowledge of the propensity of the [animal] to violence and that he [or she] retained sufficient control over the . . . premises to afford an opportunity for the [landowner/]landlord to require the tenant to remove the [animal]." *Langford v. Darden*, No. M2004-00158-COA-R3-CV, 2005 WL 378774, at *2 (Tenn. Ct. App. Feb. 16, 2005). In other words, a duty of reasonable care arises from the landowner/landlord knowing of the unsafe condition on the premises created by the animal. *See McKenna v. Jackson*, No. 01-A-01-9510-CV00438, at *2 (Tenn. Ct. App. Mar. 29, 1996).

Applying this principle to the facts in the present case, it is clear that issues of material fact remain in dispute. Regarding prior notice, Ms. Cook submitted the affidavit of Ms. Fuqua stating that the pigs had run at large "[o]n more than ten (10) occasions" prior to the incident at issue in this case and that the pigs "had a bad habit of jumping up on things." Ms. Fuqua further stated that Mr. Fuqua "was fully aware" of both of those facts. Additionally, Mr. Fuqua admitted during his deposition that the pigs had been on the property long before the incident occurred and that he told Mr. Tipton "he needed to get rid of them" because "they [were] going to cause trouble."

Although the order of protection prohibited Mr. Fuqua from coming onto the property, he still should have retained sufficient control over it to force Mr. Tipton to remove the pigs or to keep them properly secured in the fenced-in area because the order of protection did not constitute a lease entitling Mr. Tipton to exclusive possession of the property. Mr. Fuqua still retained his legal rights over the property and could have sought removal of the pigs without stepping foot on the property. *See Langford*, 2005 WL 378774,

at *2 ("It is settled in law in this jurisdiction that "[a] tenant is entitled to the exclusive possession of the leased premises against the landlord for a landlord retains no rights over leased premises, except such as are reserved and clear in express terms."). Based on the foregoing facts, we conclude that issues of material fact remain in dispute regarding whether Mr. Fuqua had sufficient knowledge of the pigs' harmful behaviors and whether he had sufficient control over the property allowing him an opportunity to remove or secure the pigs. As a result, we conclude that the trial court erred in granting summary judgment.[5]

CONCLUSION

The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are assessed against the appellee, Gary Lynn Fuqua, for which execution may issue if necessary.


_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE

---

[5] In his appellate brief, Mr. Fuqua argues that this appeal is utterly devoid of merit and seeks an award of damages pursuant to Tenn. Code Ann. § 27-1-122. In light of our decision to reverse the trial court's judgment, it is clear that the appeal has merit. Mr. Fuqua's request is denied.