IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 9, 2019 Session

## TWENTY HOLDINGS, LLC v. LAND SOUTH TN, LLC AND BRANDON MAJORS

**Appeal from the Circuit Court for Davidson County**
**No. 16C-769 Hamilton V. Gayden, Jr., Judge**

_____

### No. M2018-01903-COA-R3-CV

_____

Plaintiff sued defendant-company and its employee for damages to its real property when the defendant-company's tractor-trailer collided with the plaintiff's residential properties while the truck was unmanned. The plaintiff raised claims of negligence, gross negligence, recklessness, trespass, negligent hiring, negligent entrustment, and punitive damages. A jury trial occurred, and the trial court granted the defendants' motion for a directed verdict as to all but the plaintiff's negligence claim. The jury later awarded the plaintiff $185,000.00 for the diminution in value to the real property. Both parties appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Roland W. Baggott, Nashville, Tennessee, for the appellant, Twenty Holdings, LLC.

David B. Scott and Kobina P. Ankumah, Nashville, and Jay W. Mader, Knoxville, Tennessee, for the appellees, Land South TN, LLC, and Brandon Majors.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Plaintiff/Appellant Twenty Holdings, LLC ("Plaintiff") owned real property in Nashville consisting of a duplex rented to two separate tenants. A nearby tenant, Defendant/Appellee Brandon Majors, drove a 2008 Mack Truck ("the truck" or "the tractor") for his employer, Defendant/Appellee Land South TN, LLC ("Land South" and together with Mr. Majors, "Defendants"). On December 5, 2015, Mr. Majors parked the

truck, with an attached 53 foot trailer (together with the tractor, "the tractor-trailer"), near his residence at the top of a steep hill with the front of the truck pointing toward the drop off of the hill and toward Plaintiff's property. According to Mr. Majors's later testimony, he parked the tractor-trailer on a relatively flat portion of land before a drop off, which he believed was safe due to his more than a decade of experience driving trucks of this kind. Moreover, he testified that he took various precautions in securing the tractor-trailer, including engaging the parking brake, placing garden timbers under the wheels, letting the trailer down, and placing the tractor-trailer in reverse.

Despite the precautions, within hours of parking the tractor-trailer at his residence, the tractor-trailer rolled down the hill for a distance of approximately 600 feet. The trailer of the truck detached and stopped on the hill; the truck, however, barreled into Plaintiff's properties, stopping in one home's living area. Two residents were home during the collision, but fortunately were uninjured.

Plaintiff filed a complaint against Defendants on March 21, 2016, asserting claims of negligence, gross negligence, recklessness, trespass, vicarious liability, negligent entrustment, negligent hiring, and punitive damages. The complaint alleged that the collision had caused significant damage to Plaintiff's properties, as it destroyed a common fire wall between the properties, as well as the properties' front brick wall. The complaint sought $350,000.00 in compensation for all the claims other than the claim for punitive damages, for which Plaintiff sought $500,000.00.

Defendants filed an answer on May 13, 2016, admitting that Plaintiff's property was damaged but denying all liability. Later, on June 28, 2017, Defendants filed a motion for partial summary judgment, seeking dismissal of the punitive damages claim. Plaintiff responded in opposition to Defendants' motion for partial summary judgment on August 28, 2017.

In the meantime, on August 3, 2017, Plaintiff filed a motion in limine and request for sanctions alleging that Defendants had sold the tractor-trailer, spoliating critical evidence. Plaintiff noted that it learned that the tractor-trailer was no longer in Defendants' possession by virtue of interrogatories sent on August 29, 2016, and answered on October 27, 2016. The tractor, however, was sold on September 12, 2016. As such, Plaintiff sought an order of default judgment against Defendants or, in the alternative, an order establishing that the tractor-trailer was not in good working order, was not parked in a safe manner, that these facts were known to Defendants, and that Defendants acted in conscious disregard of known risks. Plaintiff also sought to prevent Defendants from presenting evidence opposing Plaintiff's claims, as well as a jury instruction requiring a negative inference that examination of the tractor-trailer would have been detrimental to Defendants.

Defendants responded in opposition to Plaintiff's motion in limine relative to spoliation. Therein, Defendants noted that Plaintiff did not request to inspect the tractor-trailer, but merely asked via interrogatory for the location of the truck, in its August 2016 interrogatory. According to Defendants, Plaintiff only asked to inspect the truck in a third request for production served on or about March 17, 2017, nearly a year after the filing of the complaint. Defendants also too issue with Plaintiff's attempts to conflate the tractor with the trailer involved in the accident; while the tractor, i.e., the truck, was sold, the trailer was not sold and was available for inspection.

On September 5, 2017, the trial court entered an order denying Defendants' motion for partial summary judgment and granting, in part, Plaintiff's first motion in limine. With regard to spoliation, the trial court explained as follows:

> After due proceedings had before this Court and upon considering the pleadings, memoranda, evidence submitted to this Court, the arguments of the parties and the oral arguments of Counsel at the hearing, this Court:
> FINDS that the defendants did not have an obligation to ask this Court for permission to sell the Tractor in this case, but did have an obligation to act in good faith;
> FINDS that the Tractor was in the control of the defendants;
> FINDS that the defendant knew or should have known that the Tractor was relevant to this litigation;
> FINDS the defendants did not act in good faith when they sold the Tractor;
> FINDS that the plaintiff was prejudiced by the defendants' sale of the Tractor;
> FINDS that the spoliation of the Tractors by the defendants is clear; and
> FINDS that the evidence that Tractor would have supplied would have been unfavorable to the defendants.
>
> THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, that the plaintiff's First Motion in Limine and for Rule 37 Sanctions Due to Spoliation of Evidence is GRANTED. Considering the totality of the circumstances, this Court, in its discretion, declines to enter the sanctions proposed by the plaintiff and determines that the proper sanction is that this Court will provide a negative inference related to the Tractor and will: (a) instruct the jury in this matter that the defendants spoliated the Tractor in bad faith so that the evidence the Tractor would have provided could not be brought to this Court; (b) instruct the jury that it may draw a negative inference related to the Tractor due to its spoliation, specifically including that it may, for all purposes, infer that the Tractor was not in good working condition and that it may infer that evidence that would have been provided

by the Tractor would be unfavorable to the defendants. Plaintiff is directed to prepare the jury instruction, which shall be submitted to this Court at the appropriate time before trial.

The trial court further ruled that the spoliation of evidence could be related to Plaintiff's punitive damages claim. As such, the trial court denied Defendants' motion for partial summary judgment as to that claim.

Plaintiff filed a second motion in limine on April 27, 2018. Among other things, Plaintiff sought entry of an order declaring the truck a "commercial vehicle" rather than a "farm vehicle," and a jury instruction directing the jury to draw a negative inference from Defendants' failure to comply with regulations applicable to commercial vehicles. Plaintiff also sought an order that the proper measure of damages was cost of repair.

In addition to filing a response to Plaintiff's second motion in limine relative to damages, Defendants filed their own motion in limine on April 27, 2018. Therein, Defendants asked the trial court to determine the proper measure of damages in advance of trial. Specifically, Defendants asked that Plaintiff be prevented from arguing that the measure of damages should be cost of repair and that the measure of damages be set as the difference between the reasonable market value of the property prior to and after the collision. Plaintiff responded in opposition to Defendants' motion in limine on May 7, 2018, requesting that the trial court rule, as a matter of law, that the damage to Plaintiff's property was temporary and the proper measure of damages is cost to repair.

The trial court entered an order on June 11, 2018, denying the parties' motions in limine relative to the measure of damages. Instead, the trial court ruled that the jury would first decide by questionnaire whether the damage to Plaintiff's property was temporary or permanent and the trial court would thereafter instruct the jury on the proper measure of damages. The trial court also denied Plaintiff's motion in limine related to whether the tractor was a farm or commercial vehicle. As such, the trial court ruled that neither party would be permitted to present evidence as to this issue.

Plaintiff filed a third motion in limine on June 20, 2018, requesting *inter alia*, an order preventing Defendants from presenting any evidence "that contradicts" the trial court's previous order finding spoliation of the tractor. The trial court eventually denied this request by order entered July 2, 2018.

The case was tried before a jury June 25 through 28, 2018. Defendants admitted negligence immediately prior to trial. After the jury was selected, on the second day of trial, the trial court heard oral argument on its previously ordered spoliation ruling, presumably as it related to Plaintiff's third motion in limine, discussed *supra*. The trial court orally ruled that its spoliation ruling would be amended to provide only a rebuttable presumption that the evidence was spoliated and detrimental to Defendants. Counsel for

- 4 -

Plaintiff then argued that because of this ruling, the trial court's prior ruling excluding evidence of whether the tractor was a farm or commercial vehicle should be reversed and Plaintiff be permitted to submit evidence that Defendants did not comply with applicable regulations. The trial court agreed, but counsel for Defendants objected that it was not prepared to present proof on this issue, having relied on the earlier exclusion. The trial court then essentially offered Plaintiff two options: withdraw its request to present evidence on this issue or take a mistrial. Plaintiff chose to proceed with the trial. The trial court gave a spoliation instruction to the jury that contained a rebuttable presumption and Plaintiff discussed spoliation in its opening statement.

At trial, Mr. Majors testified that he took several precautions in securing the tractor-trailer when he parked. Over objection, the police investigator assigned to the case gave his opinion that the brakes on the truck were not "set" prior to the incident. The parties also presented competing evidence on the damages incurred by Plaintiff. Plaintiff presented proof that the total damages, including lost rent and cost of repair, totaled $391,400.00. In contrast, Defendants' real estate expert testified that the difference in market value of the property before and after the collision was $0, i.e., that the land was worth the same amount with or without the structures on it.

The trial court granted Plaintiff a directed verdict on negligence and vicarious liability at the close of Plaintiff's proof. At the same time, the trial court granted a directed verdict to Defendants as to gross negligence, recklessness, trespass, negligent entrustment, negligent hiring, and punitive damages. In ruling, the trial court specifically rejected the police investigator's testimony regarding the tractor-trailer's brakes as being outside his area of expertise. The trial court at that time also reversed its previous ruling regarding spoliation, finding instead that Defendants should not be found to have spoliated the tractor, given that Plaintiff had ample time to request inspection of the tractor prior to its sale. In addition, the trial court noted that Plaintiff's complaint did not include allegations that the truck was malfunctioning at the time of the incident.

Following the presentation of Defendants' proof, the parties and the trial court also participated in a charge conference concerning the jury instructions. In particular, Plaintiff objected to the inclusion of Tennessee Pattern Jury Instruction Civil 14.45, arguing that it conflicted with two special instructions chosen by the parties. The trial court overruled Plaintiff's objection and presented the jury with four damages instructions outlining the measure of damages appropriate as to both permanent and temporary damage. During deliberations, the jury asked the following question: "If we go with permanent damages, are we limited to the fair value before and after the accident?" After a conference with the parties, the trial court responded in the affirmative.

The jury then returned a unanimous verdict for the diminished value of the property in the amount of $185,000.00 and $0.00 for lost rental income. Plaintiff filed separate motions for discretionary costs and prejudgment interest on July 9, 2018.

Defendants also sought an award of discretionary costs by motion filed July 12, 2018. The jury verdict was filed on July 16, 2018, and a substituted order of judgment was entered on the same day.

On August 9, 2018, Plaintiff filed a request for findings of fact and conclusions law pursuant to Rule 52.01 of the Tennessee Rules of Civil Procedure. On August 14, 2018, Plaintiff also filed a motion for new trial. On August 17, 2018, the trial court entered an order granting Plaintiff's motion for discretionary costs but denying Plaintiff's motion for prejudgment interest and Defendants' motion for discretionary costs. On September 20, 2018, the trial court entered an order denying Plaintiff's motion for new trial, except to the extent that the trial court had denied prejudgment interest. Instead, the trial court ruled that it would allow prejudgment interest from the date of the incident at 5%. The trial court also denied Plaintiff's request for additional findings of fact and conclusions of law. Plaintiff thereafter filed a timely notice of appeal to this Court.

## ISSUES PRESENTED

Plaintiff raises the following issues, which are taken and slightly restated from its brief:

1. Whether the trial court erred when it declined to rule on the determination of whether the Tractor was a commercial vehicle or a farm vehicle and excluded the evidence that the defendants failed to maintain the records required by the Federal Motor Carrier Regulations.
2. Whether the trial court erred by applying an incorrect legal standard when granting the directed verdict on the trespass claim at the close of Plaintiff's proof.
3. Whether the trial court erred when it reversed its prior evidentiary ruling and sanction on spoliation at the close of Plaintiff's proof.
4. Whether the trial court erred when it granted a directed verdict on plaintiff's claims for gross negligence, recklessness, trespass, negligent entrustment, negligent hiring and punitive damages.
5. Whether the trial court erred when instructed the jury on the measure of damages, specifically that it instructed the Jury on both permanent damages and temporary damages and issued conflicting instructions.
6. Whether the trial court erred when it failed to award the plaintiff pre-judgment interest at the rate of 10% per annum.

In the posture of Appellee, Defendants argue that the trial court erred in awarding prejudgment interest.

## ANALYSIS

- 6 -

## I. Exclusion of Evidence that Tractor-trailer was a Commercial Vehicle

Plaintiff first asserts that the trial court erred in refusing to make a determination as to whether the tractor-trailer was a farm or commercial vehicle and thereafter excluding evidence that Defendants failed to maintain records on the vehicle pursuant to Tennessee regulations applicable to commercial vehicles. "Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion." *DeLapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004) (citing *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001)). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." *Dickey*, 63 S.W.3d at 723.

In this case, the evidence in dispute concerns Defendants' alleged noncompliance with certain reporting regulations applicable to commercial vehicles. *See* Tenn. Comp. R. & Regs. 1340-06-01-.08 (adopting federal motor carrier safety regulations); *see also* 49 C.F.R. § 390.5 (defining a "Covered farm vehicle"); 49 C.F.R. § 396.3 (requiring regular inspections, maintenance, and record keeping of motor carriers); 49 C.F.R. § 396.11 (requiring daily reports from drivers). Plaintiff asserts that the tractor-trailer was not a farm vehicle, but a commercial vehicle, and was therefore subject to all relevant inspection, maintenance, and record keeping regulations. Plaintiff further contends that the trial court exclusion of evidence that Defendants did not comply with these regulations was an abuse of discretion and should result in reversal on appeal, as these failures support Plaintiff's claim of gross negligence, recklessness, trespass, and punitive damages.

Defendants disagree that the trial court erred in excluding this evidence, arguing that the tractor-trailer was a combined farm vehicle under Tennessee law. Moreover, Defendants argue that Plaintiff cannot now complain regarding the exclusion of this evidence where it was offered and declined a mistrial on this basis. On this point, we agree with Defendants.

The transcript in this case reveals that Plaintiff raised the exclusion of this evidence at trial after the trial court altered its ruling regarding the spoliation of evidence. In essence, Plaintiff argued that the trial court's alteration of the spoliation ruling required reconsideration of the farm/commercial vehicle evidence, as to now exclude this evidence would place Plaintiff at a disadvantage. The trial court then appeared to reverse its decision to exclude the evidence on the farm/commercial vehicle dispute. Counsel for Defendants objected to the reversal, noting that the ruling "adds a whole new component to this case that I have no witnesses, no documents prepared for this at all. . . . I thought that was off the table." Then the following exchange occurred:

THE COURT: Well, it's on the table. Do you want a mistrial?
[Counsel for Defendants]: If it's on the table, I'm moving for a mistrial.

THE COURT: I'll withdraw it.

[Counsel for Plaintiff]: Your Honor, I think that the issue here is not one that would cause a mistrial, but rather that what we have is the change from the Court's previous ruling on the spoliation that we've relied upon since September of last year, and now we're faced with having to have evidence that hasn't been presented on the rebuttable side. . . .

THE COURT: Do you want a mistrial?

[Counsel for Plaintiff]: I want to go forward, but I want to go forward -

THE COURT: Well, he's right. This is a new element to the case. It may be relevant. You -- I may be wrong in not putting it in the first time. Do you want to withdraw your motion?

[Counsel for Plaintiff]: Withdraw my motion for?

THE COURT: The motion in limine that we were discussing, whether it's a commercial or a farm vehicle. Which I rule in a lot of cases that it is not.

We need to get going with this case. Do you want to -- if you want -- if you're going to stand on that, then I'll have to give him the right to defend himself.

[Counsel for Plaintiff]: And the result is going to be that you're going to order a mistrial?

THE COURT: If it's an important component of this case, then he has a right to defend himself.

[Counsel for Plaintiff]: May I ask to speak with my client about this?

THE COURT: Sure.

(Recess.)

THE COURT: [Counsel for Plaintiff]?

[Counsel for Plaintiff]: Your Honor, we're prepared to proceed with the trial.

THE COURT: Call the jury.

Which means that we won't get into the commercial versus farm aspect of this case.

Thus, the record reveals that the trial court in fact reversed its prior exclusion to allow evidence of the farm versus commercial vehicle issue to be heard by the jury. When Defendants objected, however, the trial court ruled that it would be improper to proceed without allowing Defendants an opportunity to respond. Thus, the trial court essentially gave Plaintiff two options: (1) stand on its desire to submit evidence regarding regulations applicable to the tractor-trailer, resulting in a mistrial to allow Defendants to respond; or (2) proceed to trial without evidence on this issue. Plaintiff chose the latter.

The Tennessee Rules of Appellate Procedure state that appellate relief is generally not available "to a party responsible for an error or who failed to take whatever action

was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). This Court has previously held that where a party could have nullified an error by taking an offered mistrial, the party was not entitled to appellate relief. *See Harwell v. Walton*, 820 S.W.2d 116, 120 (Tenn. Ct. App. 1991) ("The trial judge even invited a mistrial on four occasions. Plaintiff clearly did not want a mistrial, therefore, all objections to such are now waived."). In another case where a party did not take advantage of the trial court's offer to resume a hearing on a disputed issue, we also held that the party "forfeited her right to appellate relief by failing to pursue the relief readily available to her . . . that would have nullified the harmful effect of the error in the trial court." *Stegall v. Stegall*, No. M1998-00948-COA-R3-CV, 2001 WL 846047, at *8 (Tenn. Ct. App. July 27, 2001) (citing *Harwell*, 820 S.W.2d at 120). The same is true in this case. Here, by refusing the trial court's offer of a mistrial to allow both parties to present evidence on this issue, Plaintiff forfeited its right to appellate relief regarding the exclusion of this evidence. This issue is therefore without merit.

## II.    Trespass

Plaintiff next asserts that the trial court erred in granting a directed verdict as to its trespass claim. A motion for a directed verdict provides a vehicle for deciding questions of law; the question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. *Burton v. Warren Farmers Co-Op.*, 129 S.W.3d 513 (Tenn. Ct. App. 2002).  Appellate courts must conduct a *de novo* review of a trial court's ruling on a motion for a directed verdict, applying the same standards that govern the trial court's determination. *Brown v. Crown Equip. Corp.*, 181 S.W.3d 268, 281 (Tenn. 2005) (citing *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003)). The plaintiff's verdict cannot be based upon speculation, conjecture, guesswork, or a mere spark or glimmer of evidence. *Bandeian v. Wagner*, 970 S.W.2d 460 (Tenn. Ct. App. 1997). A directed verdict is appropriate only when evidence, viewed reasonably, supports only one conclusion. *Remco Equipment Sales, Inc. v. Manz*, 952 S.W.2d 437, 439 (Tenn. Ct. App. 1997). If "reasonable minds could . . . differ as to the conclusions to be drawn from the evidence," the motion must be denied. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn.1994).  Motions for a directed verdict require more certainty and proof than do motions for an involuntary dismissal. *Smith v. Inman Realty Co.*, 846 S.W.2d 819 (Tenn. Ct. App. 1992).  In reviewing a motion for a directed verdict, courts must take the strongest legitimate view of the evidence against the directed verdict and must deny the motion in any case where all reasonable persons would not reach the same conclusion. *Smith v. Inman Realty Co.*, 846 S.W.2d 819 (Tenn. Ct. App. 1992); *Brown*, 181 S.W.3d at 281; *Gaston*, 120 S.W.3d at 819.  Only if there is no material evidence in the record that would support a verdict for the plaintiff under any of the plaintiff's theories may the trial court's action in directing a verdict be sustained. *Jamestowne on Signal, Inc. v. First Federal Sav. & Loan Ass'n*, 807 S.W.2d 559 (Tenn. Ct. App. 1990).  To avoid a directed verdict under Tenn. R. Civ. P. 50, the non-moving party must present some evidence on every element of its case—enough evidence

to establish at least a prima facie case. ***Richardson v. Miller***, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000) (citing ***Harrogate Corp. v. Systems Sales Corp.***, 915 S.W.2d 812, 818 (Tenn. Ct. App. 1995)).

In ruling on this issue, the trial court explicitly rejected testimony from the investigating police officer that Mr. Majors did not engage the brakes on the tractor and found that Mr. Majors did not commit trespass:

> The Court finds it is not sufficient that Mr. Majors intended for this tractor to go down the hill and strike -- strike the Plaintiff's property.
>
> [The investigating police officer] testified against what I ruled previously, but the cat is out of the bag, he and his opinion was that Mr. Majors didn't park the car as he said he did and he admitted he's not an accident reconstructionist and I don't accept his lay opinion so there's no proof at all that there's any reckless act by Mr. Majors.
>
> The fact that he parked on a hill was not the best choice but it was . . . allowable and so the Court finds that trespass doesn't apply to this case and grant a motion on that ground.

To support this ruling, both the trial court and Defendants cite this Court's opinion in ***City of Townsend v. Damico***, No. E2013-01778-COA-R3-CV, 2014 WL 2194453 (Tenn. Ct. App. May 27, 2014). In particular, the ***Damico*** panel cited an earlier case from the Tennessee Supreme Court that discussed trespass in a different context—trespass on the person, i.e., assault and battery. ***Id.*** at *4 (citing ***Kite v. Hamblen***, 241 S.W.2d 601, 603 (Tenn. 1951)). The court noted that the ***Kite*** court held that "[t]respass is an intentional harm, and where there is no intentional act, in the sense of an act voluntarily done, there is no trespass." ***Id.*** (quoting ***Kite***, 241 S.W.2d at 603). Additionally, the court cited a treatise for the proposition that

> The controlling issue is the intent to complete the physical act, regardless if, in so acting, the actor did not intend to commit a trespass and acted in good faith. Although it is not necessary that the trespasser intend to invade the property, commit a trespass, or even know that the act will constitute one, it is required that there be an intent to do the act that results in the trespass.

***Id.*** (quoting 75 Am. Jur.2d *Trespass* § 5 (2014)). The current version of the treatise confirms that trespass "is not based on a mere nonfeasance or an omission to perform a duty, as there must be an affirmative act or a misfeasance." 75 Am. Jur. 2d *Trespass* § 5 (2019) (footnotes omitted); *see also* 75 Am. Jur. 2d *Trespass* § 7 (2019) (footnotes omitted) ("The trespass must be the immediate result of force originally applied by the defendant. . . . Furthermore, a trespass may result from indirect force. One who sets in motion a force that, in the usual course of events, will damage another's property is liable for trespass."). *But see* ***Norvell v. Gray's Lessee***, 31 Tenn. 96, 103 (1851) ("And it

- 10 -

matters not that there was no actual force, for the law implies force, and damage likewise, in every unauthorized entry, or trespass[.]").

Although we agree that "[e]very trespass gives the aggrieved party the right to nominal damages and all consequential damages," *Perlaky v. Chapin*, No. E2017-01995-COA-R3-CV, 2018 WL 3603004, at *2 (Tenn. Ct. App. July 27, 2018), *perm. app. denied* (Tenn. 2018), we cannot agree that every unauthorized entry of an object onto property is a trespass. In all of the cases cited by the parties on this issue, the alleged trespass involved the voluntary decision by the defendant to cross into the plaintiff's property. *See Perlaky*, 2018 WL 3603004, at *1 (involving obstruction of an easement); *Damico*, 2014 WL 2194453, at *1 (involving a decision to float past the designated stopping point for patrons and exit the river onto private property); *McQueen v. Heck*, 41 Tenn. 212, 214 (Tenn. 1860) (involving a sheriff's decision to arrest a defendant under the belief that the action was lawful); *Norvell v. Gray's Lessee*, 31 Tenn. 96, 97 (Tenn. 1851) (involving voluntary entry on to property). The facts in this case simply do not meet this template. Here, Defendants did not drive the tractor-trailer onto Plaintiff's property, but the truck rolled down the hill unmanned. Whether by simple negligence or more reckless nonfeasance, the intrusion on Plaintiff's property was not a voluntary act by Defendants.

In sum, Plaintiff has directed this Court to no Tennessee law that suggests an actionable trespass occurs where an object enters the property of the plaintiff without an intent on the part of the object's owner/operator to perform the physical act that results in the invasion. Authority outside of Tennessee generally holds that some intentional action is required to sustain this tort, as it is generally categorized as an intentional tort:

> Trespass is an "intentional" harm; that is, where there is no intentional act, in the sense of an act voluntarily done, there is no trespass although it is not essential that the defendant act designedly if the injury is the immediate result of the force applied by him or her and the plaintiff is damaged. The essence of the cause of action for trespass is an unauthorized entry onto the land of another, and these invasions are characterized as intentional torts regardless of the actor's motivation.

7 *American Law of Torts* § 23:3 (footnotes omitted). Despite its intentional nature, specific intent is not required:

> Modern common law trespass is an intentional tort claim for damages caused by an unauthorized entry or holdover upon real property of another. The essential elements of a modern common law trespass claim are: (1) an intentional entry or holdover (2) by the defendant or a thing; (3) without consent or legal right. . . .While civil trespass is an intentional tort, intentional trespass does not require proof of specific intent, i.e., that the

tortfeasor intended to enter or remain upon property owned or controlled by another. The intent element of civil trespass only requires proof that the tortfeasor intentionally entered or remained, or caused a third party or thing to enter or remain, upon the property of another regardless of the tortfeasor's knowledge, lack of knowledge, or good faith mistake as to actual property ownership or right.

Trespass, *Plaintiff's Proof Prima Facie Case* § 14:24 (footnote omitted). As explained more fully,

A trespass to real property requires the intentional entry onto the land of another. A trespass to real property is characterized as an intentional tort, regardless of the actor's motivation. Trespass to realty is an intentional tort in the sense that it involves the intent to commit an act that violates a property right, or would be practically certain to have that effect, although the actor may not know the act he or she intends to commit is such a violation. Liability for a trespass upon real property produced by a voluntary act need not be grounded in negligence, so long as the act causing the trespass was intended.

In the context of a trespass, "intent" refers to intent to be on the land. Trespass to real property does not require proof that a person entered property with the intent to commit trespass. While a trespass clearly occurs when the actor knowingly and without authority enters the land of another, the requisite intention is to enter upon the particular land in question, irrespective of whether the actor knows or should know that he or she is not entitled to enter. The only relevant intent is that of the actor to enter the real property, and the actor's subjective intent or awareness of the property's ownership is irrelevant. It is not necessary that one act for the purpose of entering; it is enough that the actor knows that the conduct will result in such an entry, inevitably or to a substantial certainty.

It is only necessary that the actor intentionally be upon any part of the land in question. It is not necessary that one intend to invade the possessor's interest in the exclusive possession of the land or take possession and, therefore, know that the entry is an intrusion. Thus, an intent to be at the place where the trespass allegedly occurred is sufficient to show an intentional entry, even though the defendant acted in good faith, and under the mistaken belief, however reasonable, that he or she was not committing a wrong. Thus, entering upon the land of another without permission, even if innocently or by mistake, constitutes trespass. The defendant need not have contemplated any damage to the plaintiff resulting from the intentional entry. It is also immaterial whether that person honestly and reasonably believes that the land is one's own, or that he or she has the consent of the possessor or of a third person having the power

to give consent, or a mistaken belief that one has some privilege to enter, or right to be on the land.

75 Am. Jur. 2d *Trespass* § 23 (footnotes omitted).

Given the lack of Tennessee law suggesting that a trespass may occur in the absence of an intentional act by the defendant to enter the plaintiff's property, we concur with the cited authority that requires an intentional act to sustain a claim of trespass. Here, whether by virtue of negligence or recklessness, the tractor-trailer was not intentionally placed on Plaintiff's property. As such, no reasonable juror could conclude that Plaintiff's claim of trespass could be sustained. The trial court therefore did not err in directing a verdict as to this claim.

### III.    Spoliation

Plaintiff next contends that the trial court erred with regard to its spoliation rulings. A brief recitation of the procedural history of this issue is helpful. Prior to trial, Plaintiff filed a motion in limine related to the spoliation. The trial court eventually agreed to Plaintiff's Special Jury Instruction No. 1, which instructed the jury to draw a negative inference related to the tractor-trailer, including that it was not in good working order. After the jury was selected, the trial court heard additional argument on the instruction and determined that it was appropriate to alter Special Jury Instruction No. 1, so as to create a rebuttable presumption regarding the spoliation of the tractor-trailer. At the start of trial, this rebuttable presumption instruction was provided to the jury. At the close of plaintiff's proof, however, the trial court once again altered its ruling, now finding that there was no spoliation based on the evidence presented at trial. Plaintiff asserts that the trial court's decision constitutes reversible error where it relied on the trial court's initial ruling of spoliation in the presentation of proof, the trial court's initial ruling of spoliation was "sufficiently factually supported," and a "sanction was merited."

We cannot agree, however, that Plaintiff has shown its entitlement to relief in this case. Importantly, other than a citation to legal authority concerning the standard of review applicable to this issue, this section of Plaintiff's brief cites no law in support of this assertion of error. Rule 27 of the Tennessee Rules of Appellate Procedure require, *inter alia*, that the appellant's argument be supported by "citations to authorities . . . relied on[.]" Based on this rule, courts have held that "the failure . . . to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." **Bean v. Bean**, 40 S.W.3d 52, 55 (Tenn. Ct. App. 2000). Moreover, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." **Sneed v. Bd. of Prof'l Responsibility of Supreme Court**, 301 S.W.3d 603, 615 (Tenn. 2010).

- 13 -

Here, Plaintiff's argument on this issue contains no authority regarding the factual basis required to support a finding of spoliation, the criteria used to determine the appropriate sanction, or any authority in support of its argument that the trial court's decision to alter its prior interlocutory ruling was erroneous and prejudicial. In the absence of appropriate legal authority to support this argument, any alleged error predicating on the trial court's spoliation ruling is waived.

## IV. Gross Negligence, Recklessness, Negligent Entrustment, Negligent Hiring, and Punitive Damages

Plaintiff next contends that the trial court erred in granting a directed verdict as to its claims of gross negligence, recklessness, negligent entrustment, negligent hiring, and punitive damages.[1] As previously discussed, a directed verdict should only be granted when evidence, viewed reasonably, supports only one conclusion. *Remco Equipment*, 952 S.W.2d at 439. We review the trial court's decision to grant a directed verdict de novo with no presumption of correctness. *Brown*, 181 S.W.3d at 281. We therefore will review each of the remaining claims to determine if Plaintiff presented evidence to support each required element of the prima facie case. *See Richardson v. Miller*, 44 S.W.3d at 30.

### A. Recklessness and Gross Negligence

Plaintiff first argues that the trial court erred in granting a directed verdict on Plaintiff's claims of gross negligence and reckless conduct. Plaintiff contends that the trial court's ruling as to these claims is not supported by any specific factual findings. Moreover, with regard to recklessness in particular, Plaintiff points out that the trial court made inconsistent oral rulings as to whether Mr. Majors's conduct rose to the level of recklessness. Finally, Plaintiff contends that there was sufficient evidence presented at trial that these issues should have been presented to the jury. Defendants agree that the trial court granted a directed verdict on both these claims, but argues that the ruling was correct where there was no evidence presented to support either claim.

As an initial matter, we agree that the trial court's ruling as to these claims is rather deficient. In ruling on Defendants' motion for directed verdict, the trial court did not make any specific ruling with regard to the claims of gross negligence or recklessness. Indeed, the trial court at times made conflicting findings with regard to recklessness, at one point characterizing Mr. Majors's behavior as reckless and at other times stating that there was no proof that Mr. Majors committed a "reckless act." The trial court's substitute order of judgment also fails to specifically rule on these particular claims.

---

[1] Plaintiff also raises the issue of trespass in this portion of his brief. We have previously addressed the directed verdict with regard to trespass, *supra*.

Were these facts the end of the inquiry, we might be inclined to agree with Plaintiff that this constitutes a reversible error. The record reveals, however, that following the trial court's ruling on the directed verdict, no objection was made to the fact that the trial court apparently granted a directed verdict on these claims without any specific findings thereon. Rather, following the ruling, counsel for Plaintiff asked the trial court if "the only claim that we are proceeding on going forward is Count 1, negligence[?]" The trial court answered in the affirmative and thereafter expressly instructed the jury that Plaintiff's "claims for gross negligence and recklessness . . . were dismissed at directed verdict." No objection was lodged at that time that the trial court did not properly direct a verdict as to the claims of gross negligence and recklessness. Moreover, although Plaintiff raised the dismissal of these claims as an error in his motion for new trial, no argument was made that the trial court's ruling was insufficient with regard to the claims of gross negligence and recklessness.[2]

As previously discussed, no appellate relief is afforded to a party who failed to take corrective action to limit the harmful effect of an error. *See* Tenn. R. App. P. 36(a). Here, Plaintiff did not raise the trial court's failure to make a specific ruling as to the claims of recklessness or gross negligence at the time the trial court issued its directed verdict ruling or in its motion for new trial. Although the trial court's ruling could certainly have been clearer, the trial court is not required under Rule 50.01 to make specific findings to support its directed verdict ruling. *See* **Green**, 2013 WL 10481171, at *7. Additionally, the parties had sufficient notice that a verdict was directed on these claims. As such, while we encourage trial courts to be more specific in their rulings, these procedural irregularities are not sufficient to necessitate a new trial.

We therefore turn to consider whether the trial court correctly directed a verdict as to Plaintiff's claims of gross negligence and recklessness. With regard to gross negligence, we have explained as follows:

> In order to prevail on a claim of gross negligence, a plaintiff must first establish that the defendant engaged in conduct that amounts to ordinary negligence. *See* **Menuskin v. Williams**, 145 F.3d 755, 766 (6th Cir. 1998). In addition to proving that the defendant has committed a negligent act, the plaintiff must prove that the act was "done with utter unconcern for the

---

[2] Concurrent with its motion for new trial, Plaintiff also filed a motion for specific findings of facts and conclusions of law under Rule 52.01 of the Tennessee Rules of Civil Procedure. Plaintiff did not specifically mention the deficiencies with regard to this particular ruling, but made a blanket request for findings on every ruling made by the trial court at trial. The trial court correctly denied the motion by noting that Rule 52.01 is only applicable in bench trials. *See* Tenn. R. Civ. P. 52.01 (applying to "all actions tried upon the facts without a jury"); **Green v. Champs-Elysees, Inc.**, No. M2012-00082-COA-R3-CV, 2013 WL 10481171, at *7 (Tenn. Ct. App. Sept. 11, 2013) (holding that Rule 52.01 did not apply to a directed verdict ruling in a bench trial and Rule 50.01 did not require specific findings of fact and conclusions of law).

safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law." *Ruff v. Memphis Light, Gas, and Water Div.*, 619 S.W.2d 526, 528 (Tenn. Ct. App. 1981) (quoting *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)). Gross negligence is defined as "a conscious neglect of duty or a callous indifference to consequences" or "such entire want of care as would raise a presumption of a conscious indifference to consequences." *Jones* [*v. Tennessee Riders Instruction Program, Inc.*, No. M2006-01087-COA-R3-CV], 2007 WL 393630, at *2 [(Tenn. Ct. App. Feb. 5, 2007)] (citing *Buckner v. Varner*, 793 S.W.2d 939, 941 (Tenn. Ct. App. 1990); *Thomason v. Wayne County*, 611 S.W.2d 585 (Tenn. Ct. App. 1980); *Sampley v. Aulabaugh*, 589 S.W.2d 666 (Tenn. Ct. App. 1979)).

*Thrasher v. Riverbend Stables*, No. M2007-01237-COA-R3-CV, 2008 WL 2165194, at *5 (Tenn. Ct. App. May 21, 2008) (hereinafter "*Thrasher I*");[3] *see also Leatherwood v. Wadley*, 121 S.W.3d 682, 694 (Tenn. Ct. App. 2003) (quoting *Odum v. Haynes*, 494 S.W.2d 795, 807 (Tenn. Ct. App. 1972)) ("Gross negligence is a 'negligent act done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.'"). Recklessness, on the other hand, generally requires an even greater level of fault:

> [T]he state-of-mind element of . . . recklessness places significant limitation on recovery. Being required to prove the tortfeasor's intent or recklessness imposes a significantly higher burden than is required for mere negligence actions. . . . The recklessness element requires the defendant to be aware of, but consciously to disregard, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care which, under all the circumstances, an ordinary person would have exercised. . . .

*Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 39–40 (Tenn. 2005) (citations omitted). *But cf.* 3 *American Law of Torts* § 10:15 ("In many

---

[3] The plaintiff filed an application for permission to appeal to the Tennessee Supreme Court in *Thrasher I*. The application was eventually granted, and the case was remanded for the Court of Appeals to reconsider its decision in light of the summary judgment standard clarified in *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76 (Tenn.2008). The Court of Appeals thereafter ruled that summary judgment to the defendant on the issue of gross negligence was not appropriate. *See Thrasher v. Riverbend Stables, LLC*, No. M2008-02698-COA-RM-CV, 2009 WL 275767, at *1 (Tenn. Ct. App. Feb. 5, 2009) (hereinafter "*Thrasher II*"), *overruled on other grounds by Copeland v. Healthsouth/Methodist Rehab. Hosp., LP*, 565 S.W.3d 260 (Tenn. 2018). Later, the Tennessee Supreme Court expressly overruled Thrasher II's holding with regard to an exculpatory clause. *Copeland*, 565 S.W.3d at 274. Neither *Thrasher II* nor *Copeland* call into question *Thrasher I's* explanation of the prima facie case required to show gross negligence.

jurisdictions, however, the term "gross negligence" has lost the connotation of a degree of negligence and has acquired a meaning describing a different kind of negligence or a meaning synonymous with conduct that is wanton or reckless.").

In analyzing this issue, we again note the lack of authority in Plaintiff's brief to support this argument. Specifically, the only authority cited in support of these claims is the definitions of each type of conduct. Moreover, the only evidence cited in support of these claims is the testimony of the investigating police officer. Tenn. Ct. App. R. 6(a)(4) (requiring the argument of the appellant contain "[a] statement of each determinative fact relied upon with citation to the record where evidence of such fact may be found"). Specifically, Plaintiff notes that the officer testified that that the tractor-trailer was parked facing the direction of Plaintiff's property, on a steep drop, and that there was room to park the tractor-trailer in a different direction. Finally, the officer testified over objection his opinion was that the brakes were not "set."

Even taking the cited evidence in the light most favorable to Plaintiff, we cannot conclude that Defendants' conduct meets the high standard required of either gross negligence or recklessness. Mr. Majors testified that he took numerous precautions in securing the tractor-trailer, including pulling the parking brake, putting timbers under the tires,[4] and placing the truck in reverse. The only evidence to the contrary was one rather speculative opinion by a police officer that the tractor-trailer's brakes were not engaged prior to the incident.[5] As previously discussed, however, the evidence supporting the plaintiff's verdict must be more than mere speculation or a glimmer of evidence. *Bandeian*, 970 S.W.2d at 461. Moreover, as the trial court's ruling on trespass shows, the trial court specifically rejected this testimony as outside the investigating police officer's expertise. Plaintiff has not raised any evidentiary issue regarding the trial court's decision to disregard this evidence. Finally, Plaintiff's own civil engineering expert testified that for the accident to have occurred in the manner it did, over such a distance, essentially "the stars aligned." Consequently, while Mr. Majors's actions certainly proved to be misguided, there is simply no competent evidence from which a reasonable mind could conclude that Mr. Majors acted "with utter unconcern for the safety of others[.]"*Ruff*, 619 S.W.2d at 528. Moreover, given the multiple steps taken by Mr. Majors to secure the tractor-trailer, it cannot be said that he consciously disregarded a substantial and unjustifiable risk. As such, the trial court did not err in directing a verdict as to these claims.

## B. Negligent Hiring and Negligent Entrustment

---

[4] The investigating officer testified that he observed these timbers.

[5] The officer also testified that Mr. Majors informed him that the brakes were engaged and testified in his deposition that he did not observe anything inconsistent with Mr. Majors's statements. In addition, the officer agreed that he did not "know what happened to the truck" before arriving on the scene. Finally, Mr. Majors testified that he could not have exited the truck without engaging the brakes.

Plaintiff next takes issue with the trial court's decision to direct a verdict on its negligent hiring and entrustment claims. "A plaintiff in Tennessee may recover for negligent hiring, supervision or retention of an employee if he establishes, in addition to the elements of a negligence claim, that the employer had knowledge of the employee's unfitness of the job." *Doe v. Catholic Bishop for Diocese of Memphis*, 306 S.W.3d 712, 717 (Tenn. Ct. App. 2008) (citing *Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258, at *3 (Tenn. Ct. App. April 4, 1996)). This Court has previously explained the claim in more detail:

> [T]his Court has previously elucidated that a claim of "negligent hiring arises only when a particular unfitness of a job applicant creates a danger of harm to others which the employer should have known." *See Phipps v. Walker*, No. 03A01-9508-CV-00294, 1996 WL 155258, at *3 (Tenn. Ct. App. Apr. 4, 1996) (citing *Gates v. McQuiddy Office Prods.*, No. 02A01-9410-CV-00240, 1995 WL 650128, at *1 (Tenn. Ct. App. Nov. 2, 1995)); *see also Wishone v. Yellow Cab. Co.*, 20 Tenn.App. 229, 97 S.W.2d 452 (Tenn. Ct. App. 1936). The *Phipps* and *Gates* Courts explained that in order to support a claim of negligent hiring, a party must provide "(1) evidence of unfitness for the particular job, (2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others, [and] (3) evidence that the prospective [employer] knew or should have known that the historical criminality of the applicant would likely be repetitive." *See Phipps*, 1996 WL 155258, at *3; *Gates*, 1995 WL 650128, at *2; *see also Counce v. Accension Health*, No. M2009-00741-COA-R3-CV, 2010 WL 786001, at *5 (Tenn. Ct. App. Mar. 8, 2010).

*Gunter v. Estate of Armstrong*, No. E2018-01473-COA-R3-CV, 2019 WL 3781724, at *9 (Tenn. Ct. App. Aug. 12, 2019). Similarly, the prima facie case for the tort of negligent entrustment requires proof of "'(1) an entrustment of a chattel, (2) to a person incompetent to use it, (3) with knowledge that the person is incompetent, and (4) that is the proximate cause of injury or damage to another.'" *Concklin v. Holland*, 138 S.W.3d 215, 222 (Tenn. Ct. App. 2003) (quoting *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 45 S.W.3d 588, 603 (Tenn. Ct. App. 2001)).

Although Plaintiff spends considerable time in its brief on the question of whether Land South engaged in a sufficient investigation of Mr. Majors at the time of his hiring and when he was entrusted with the tractor-trailer, Plaintiff points to no evidence in the record to show that at the time of the hiring or entrustment, Mr. Majors was in fact unfit for his job, posed an unreasonable risk to others, or was in any way incompetent to operate the tractor-trailer. *See Gunter*, 2019 WL 3781724, at *9; *Concklin*, 138 S.W.3d at 222. Rather, the only evidence of unfitness cited in Plaintiff's initial brief is the fact that Mr. Majors's CDL license was suspended for unpaid speeding tickets, an event that occurred after the collision at issue, which could not have been known to Land South at

the time of the hiring or entrustment.[6] *Cf. **Commerce Union Bank, Brentwood, Tennessee v. Bush**, 512 S.W.3d 217, 224 (Tenn. Ct. App. 2016) ("It is not the duty of this court to . . . search the record for facts in support of an appellant's poorly-argued issues."). In the absence of evidence that Mr. Majors was unfit for the job or that he was incompetent to use the tractor-trailer, Plaintiff's claims for negligent entrustment and hiring must fail. Consequently, the trial court did not err in directing a verdict as to these claims.

## C. Punitive Damages

Plaintiff makes a final argument as to the trial court's directed verdict ruling—that the trial court's directed verdict on the claim for punitive damages was in error. While compensatory damages are intended to make a plaintiff whole, "punitive damages are intended to 'punish a defendant, to deter him from committing acts of a similar nature, and to make a public example of him.'" **Goff v. Elmo Greer & Sons Const. Co.**, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting **Huckeby v. Spangler**, 563 S.W.2d 555, 558–59 (Tenn. 1978)). Consequently, punitive damages are "appropriate only in the most egregious cases[.]" **Id.** (citing **Hodges v. S.C. Toof & Co.**, 833 S.W.2d 896, 901 (Tenn. 1992)). "In Tennessee, therefore, a court may henceforth award punitive damages only if it finds a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly." **Hodges v**, 833 S.W.2d at 901. In the context of trespass, the Tennessee Supreme Court has also allowed punitive damages where "the trespass is accomplished fraudulently, wantonly, oppressively, or with gross negligence." **Meighan v. U.S. Sprint Commc'ns Co.**, 924 S.W.2d 632, 642 (Tenn. 1996).[7]

---

[6] In Plaintiff's reply brief, Plaintiff also asserts that negligent entrustment occurred because, due to spoliation, the jury could draw a negative inference that the tractor-trailer was not in good working order, or that the jury could have considered Land South's failure to maintain records with regard to the negligent hiring claim. The tort of negligent entrustment, however, involves entrusting a chattel to an unfit individual, not entrusting an unfit chattel to a fit individual. *See **Concklin**, 138 S.W.3d at 222 (stating that an essential element of the tort is entrustment of a chattel to "a person incompetent to use it"). In any event, the spoliation and farm vehicle issues were waived in this case, as discussed *supra*.

[7] Of course, there was no dispute in **Meighan** that defendants intentionally invaded the plaintiff's property. Specifically, the defendant in **Meighan** entered plaintiff's property to install fiber optic cable without the owner's consent. **Meighan**, 924 S.W.2d at 635. As such, we do not interpret **Meighan** as altering the fundamental nature of the tort of trespass to allow an action without some intentional physical intrusion on a plaintiff's property. *Cf. **Staats v. McKinnon**, 206 S.W.3d 532, 550 (Tenn. Ct. App. 2006) (citing **Shousha v. Matthews Drivurself Serv., Inc.**, 210 Tenn. 384, 390, 358 S.W.2d 471, 473 (Tenn. 1962)) ("It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court."). Accordingly, while a trespass, i.e., an intentional physical invasion on property, may occur innocently or with simple negligence, punitive damages will only be available where the trespass is accompanied by "egregious circumstances." **Meighan v**, 924 S.W.2d at 642.

- 19 -

We have previously determined that Plaintiff presented no evidence to support its claim for trespass, in that the unlawful entry unto Plaintiff's property was not intentional. Moreover, we have concluded that Plaintiff presented no evidence from which a reasonable person could find that Defendants acted recklessly or with gross negligence. There is no dispute that Defendants acted negligently in this case. However, simple negligence is generally held insufficient to support an award of punitive damages. *See Anderson v. U.S.A. Truck, Inc.*, No. W2006-01967-COA-R3-CV, 2008 WL 4426810, at *14 (Tenn. Ct. App. Oct. 1, 2008) ("Claims for punitive damages are generally denied in cases where only proof of simple negligence was submitted at trial."). Where Plaintiff's claims for trespass, gross negligence, and reckless conduct were properly dismissed on directed verdict against both Defendants, leaving only a simple negligence claim remaining, the trial court also did not err in directing a verdict as to Plaintiff's claim for punitive damages.

## V.    Measure of Damages and Jury Instructions

Plaintiff also asserts that the trial court committed reversible error in failing to determine the proper measure of damages before submitting the case to the jury and in providing conflicting instructions to the jury. Although the calculation of damages is an issue of fact for the jury, "'the choice of the proper measure of damages is a question of law to be decided by the court.'" *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005) (quoting *Beaty v. McGraw*, 15 S.W.3d 819, 827 (Tenn. Ct. App. 1998)). The trial court's selection of the measure of damages is therefore reviewed de novo with no presumption of correctness. *Id.*

Plaintiff contends that once again the trial court altered its pretrial ruling on the way this case would be submitted to the jury once trial was underway. First, following a motion in limine, the trial court entered a pre-trial order ruling that because the issue of permanent or temporary damage was to be determined by the jury,

> [T]he jury will be issued a questionnaire that will ask its members to determine whether the plaintiff's damages are permanent or are temporary. Thus, this Court DEFERS ruling on the proper measure of damages pending the jury's response to questionnaire and will instruct the jury as to the proper measure of damages based on the jury's response to the questionnaire.

Instead of following this path, the trial court gave several instructions to the jury at one time, which Plaintiff asserts resulted in confusing and inconsistent jury instructions.

To the extent that Plaintiff's argument is construed to take issue with the trial court's failure to follow its previously outlined method of instructing the jury, we conclude that any such issue is waived. Here, the parties engaged in extensive discussions

regarding the jury instructions at the conclusion of the proof. The trial court's failure to utilize the previously outlined procedure involving the questionnaire was not mentioned, and Plaintiff offered no objection regarding the failure to use the questionnaire procedure. Likewise, in Plaintiff's motion for new trial, the trial court's failure to follow the previously outlined procedure was not specifically raised as an error. Generally, issues may not be raised for the first time on appeal. **Black v. Blount**, 938 S.W.2d 394, 403 (Tenn.1996) ("Under Tennessee law, issues raised for the first time on appeal are waived."). Moreover, Tennessee Rule of Appellate Procedure 3(e) provides that

> in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, **jury instructions granted or refused**, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

(emphasis added). Consequently, "[i]n all civil cases tried to a jury, any ground not cited in the motion for new trial has been waived for the purposes of appeal." **Waters v. Coker**, 229 S.W.3d 682, 689 (Tenn. 2007) (citing **Boyd v. Hicks**, 774 S.W.2d 622, 625 (Tenn. Ct. App. 1989)). As such, any alleged error regarding the trial court's failure to provide the jury with the anticipated questionnaire is waived on appeal.

Plaintiff did, however, object to what it deemed conflicting jury instructions during the charge conference and specifically raised this issue, along with the trial court's alleged failure to determine the measure of damages, in its motion for new trial. As such, we conclude that Plaintiff's arguments concerning the conflicting jury instructions and the trial court's failure to determine the measure of damages are appropriately before this Court. *Cf.* **Waters v. Coker**, 229 S.W.3d 682, 689 (Tenn. 2007) (holding that there is no waiver when a party fails to object to an erroneous jury instruction, so long as the issue is raised in a motion for new trial).

In reviewing this issue, we keep the following guidance from the Tennessee Supreme Court in mind:

> "Whether a jury instruction is erroneous is a question of law and is therefore subject to de novo review with no presumption of correctness." **Nye v. Bayer Cropscience, Inc.**, 347 S.W.3d 686, 699 (Tenn.2011) (citing **Solomon v. First Am. Nat'l Bank of Nashville**, 774 S.W.2d 935, 940 (Tenn. Ct. App. 1989)). Trial courts have "a duty to impart 'substantially accurate instructions concerning the law applicable to the matters at issue.'" *Id.* (quoting **Hensley v. CSX Transp., Inc.**, 310 S.W.3d 824, 833 (Tenn. Ct. App. 2009)). This is important because "[t]he legitimacy of a jury's verdict is dependent on the accuracy of the trial court's instructions, which are the

sole source of the legal principles required for the jury's deliberations." ***Id.*** In determining whether a jury instruction is substantially accurate, we review the charge in its entirety and consider it as a whole, and we will not invalidate an instruction that "'fairly defines the legal issues involved in the case and does not mislead the jury.'" ***Id.*** (quoting ***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 446 (Tenn.1992)). Moreover, "[j]ury instructions are not measured against [a] standard of perfection." ***Akers v. Prime Succession of Tenn., Inc.***, 387 S.W.3d 495, 504 (Tenn. 2012) (first alteration in original) (quoting ***City of Johnson City v. Outdoor W., Inc.***, 947 S.W.2d 855, 858 (Tenn. Ct. App. 1996)).

***Spencer v. Norfolk S. Ry. Co.***, 450 S.W.3d 507, 510 (Tenn. 2014).

As an initial matter, we cannot conclude that trial court erred in failing to choose the measure of damages in this case. It is well-settled that the measure of damage for temporary injury to one's use and enjoyment of real estate is "the diminution in the property's rental value during the period of injury and the reasonable cost of restoration of any physical injury to the land." ***Citizens Real Estate & Loan Co. v. Mountain States Dev. Corp.***, 633 S.W.2d 763, 767 (Tenn. Ct. App. 1981) (citing multiple cases in support); *see also* ***Forsyth v. Jones***, No. 8, 1988 WL 11855, at *5 (Tenn. Ct. App. Feb. 17, 1988), *aff'd without opinion*, No. 8, 1989 WL 49301 (Tenn. 1989) (citing ***Citizens Real Estate***, 633 S.W.2d at 763) ("The correct measure of damages for the temporary injury to real property is the cost of repair plus any loss to the use, enjoyment or rental value."). In contrast, the measure of damages for a permanent injury to real property is the "'depreciation in the value of the property.'" ***Citizens Real Estate***, 633 S.W.2d at 767 (quoting ***Doss v. Billington***, 98 Tenn. 375, 39 S.W. 717 (Tenn. 1897)); *see also* ***Coleman v. Bennett***, 111 Tenn. 705, 69 S.W. 734, 736 (Tenn. 1902) (holding that the measure of damages for permanent injury to real property "is the depreciation in the market value of the property by reason of the defendant's wrong, once for all"). The question of whether an injury is permanent or temporary in nature is therefore necessary to a determination of the proper measure of damages.

The question of whether an injury to real property is temporary or permanent, however, is question of fact. *See* ***Anderson v. Am. Limestone Co.***, 168 S.W.3d 757 (Tenn. Ct. App. 2004) (holding that the question of whether a nuisance is temporary or permanent is a question of fact); *see also* ***Leggett v. Dorris***, No. M2008-00363-COA-R3-CV, 2009 WL 302290, at *3 (Tenn. Ct. App. Feb. 6, 2009) (same); *see also* ***Williams v. Cross***, 16 Tenn. App. 454, 65 S.W.2d 198, 201 (Tenn. 1932) (describing a nuisance as a type of injury to real property). Such a question was therefore within the province of the jury. *See* ***Caldwell v. Knox Concrete Prod., Inc.***, 54 Tenn. App. 393, 405, 391 S.W.2d 5, 11 (1964) (holding that the question of whether a nuisance was temporary or permanent "was a question of fact for the jury"); *see also* ***Kanbi v. Sousa***, 26 S.W.3d 495, 498

(Tenn. Ct. App. 2000) ("Our judicial system charges the jury with the duty of deciding the facts of the case under the supervision of the judge[.]").

In this case, Special Jury Instruction No. 6 stated as follows: "If the plaintiff's property can be restored to its original value by an expenditure of money and labor, the costs of such money and labor is the basic measure of damages. The measure of damages is the cost to repair and restore the property." The jury instructions also included Tennessee Pattern Jury Instruction Civil 14.43, which gave specific instructions regarding the calculation of loss of use damages. *See* 8 Tenn. Prac. Pattern Jury Instr. T.P.I.-Civil 14.43 (2018 ed.). As previously noted, these instructions contain an accurate statement of law with regard to the measure of damages for temporary injuries to property. *See* **Citizens Real Estate**, 633 S.W.2d at 767. Special Jury Instruction No. 7 concerned permanent damage:

> Permanent damage, presupposes that the premises are subject to the same lasting detriment, and that it is not to be avoided or removed by any expenditure. Before an injury to property is considered permanent, it must be practically irremediable. The measure of damage for permanent injury to one's use and enjoyment of real estate is the diminution in the property's value.

Again, this is an accurate statement of the law concerning the measure of damages where an injury is permanent. *Id.* Thus, the trial court appropriately instructed the jury on the proper measure of damages as to each type of injury to property, but correctly declined to make the factual determination as to whether the injury was in fact temporary or permanent. We therefore do not conclude that the trial court in any way abdicated its duty to determine the proper measure of damages in this case.

Plaintiff argues, however, that Special Jury Instructions Nos. 6 and 7 cannot be read in isolation, but must be considered with another instruction given by the trial court over Plaintiff's objection— Tennessee Pattern Jury Instruction Civil 14.45:

> The measure of damage to real property is the lesser of the following amounts:
>
> 1. The reasonable cost of repairing the damage to the property; or
> 2. The difference between the fair market value of the premises immediately prior to and immediately after the damage.

Defendants contend that this jury instruction again contains a substantially accurate statement of the law. We agree. Tennessee courts have indeed held that "[t]he proper measure of damages for injury to real property is the lesser of either (1) the cost of repairing the injury, or (2) the difference in value of the premises immediately prior to

- 23 -

and immediately after the injury." ***Durkin v. MTown Constr., LLC***, No. W2017-01269-COA-R3-CV, 2018 WL 1304922, at *2 (Tenn. Ct. App. Mar. 13, 2018) (citing ***Simmons v. City of Murfreesboro***, No. M2008-00868-COA-R3-CV, 2009 WL 4723369, at *5 (Tenn. Ct. App. Dec. 9, 2009) (citing ***Fuller v. Orkin Exterminating Co., Inc.***, 545 S.W.2d 103, 108–09 (Tenn. Ct. App. 1975)). Where cost of repair is the appropriate measure of damage, for example where an injury is temporary, the cost of repair should be awarded "unless the repairs are not feasible or the cost of repair is disproportionate to the diminution in value." ***Id.*** (citing ***GSB Contractors, Inc. v. Hess***, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005)).

Having reviewed the jury instructions as a whole and the evidence presented, we conclude that the instructions were appropriate as they contain a substantially accurate statement of Tennessee law on this subject and were not misleading to the jury. The instructions clearly indicated that the jury was required to make a determination as to whether the injury to the property was permanent or temporary, see ***Citizens Real Estate***, 633 S.W.2d at 767, and reflected Tennessee law that the jury should also consider whether the cost of repairing the injury was more than the difference in value to the property as a result of the injury. *See* ***Durkin***, 2018 WL 1304922, at *2. The jury's question further indicates that they understood their role in first determining the type of injury at issue before calculating the amount of damages owed.

Moreover, the jury's verdict corresponds with Tennessee law and the evidence presented. *See* ***In re Estate of Link***, 542 S.W.3d 438, 459 (Tenn. Ct. App. 2017) (citing ***Payne v. CSX Tansp., Inc.***, 467 S.W.3d 413, 446 (Tenn. 2015)) ("We may consider the jury instructions in conjunction with the verdict form in determining whether the issues were presented to the jury in a clear and fair manner."). At trial, Plaintiff's expert testified that the cost to repair the building on Plaintiff's property totaled over $334,000.00. With lost rental income, these damages totaled over $390,000.00. In contrast, the only evidence on diminution in value was that the property was valued at $185,000.00 before the collision, and remained valued at $185,000.00 after the collision, resulting in a diminution in value of $0. While the jury did not totally credit Defendants' expert testimony that there was no diminution of value, the only evidence of diminished value in the record indicated that the cost of repair well exceeded the diminution in value to the property. Under Tennessee law, the jury was therefore authorized to award Plaintiff damages for diminished value, rather than cost of repair. *See* ***Durkin***, 2018 WL 1304922, at *2. Of course, if the jury found the damage to be permanent, as suggested by their question, they correctly used the diminution in value as their measure of damages. *See* ***Citizens Real Estate***, 633 S.W.2d at 767.

Moreover, the amount awarded, $185,000.00, is well within the range of values submitted at trial. *Cf.* ***Meals ex rel. Meals v. Ford Motor Co.***, 417 S.W.3d 414, 419 (Tenn. 2013) (citing ***Ellis v. White Freightliner Corp.***, 603 S.W.2d 125, 126–27 (Tenn. 1980)) ("The range of reasonableness is determined by establishing the upper and lower

limits of an award of damages that can be supported by material proof.").[8] On the whole, we therefore cannot conclude that the trial court's jury instructions constitute reversible error. *See* Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process.").

## VI.    Prejudgment Interest

Finally, both parties raise issues as to the trial court's decision to award 5% per annum prejudgment interest from the date of the incident. Plaintiff contends that the trial court abused its discretion in failing to award 10% per annum in prejudgment interest. In contrast, Defendants argue that the trial court should have awarded no prejudgment interest.

Prejudgment interest is authorized by Tennessee Code Annotated section 47-14-123. Under this statute, prejudgment interest is generally not to exceed "a maximum effective rate of ten percent (10%) per annum[.]" Tenn. Code Ann. § 47-14-123. Unless made mandatory by a specific statute or law, prejudgment interest may be awarded in the discretion of the trial court. *Reeder v. Reeder*, 375 S.W.3d 268, 281 (Tenn. Ct. App. 2012) ("Therefore, in most civil actions whether to award prejudgment interest lies within the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion."). "A trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014) (citing *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008)).

"The purpose of prejudgment interest is not punitive, but to fully compensate a prevailing plaintiff for the loss of the use of those funds to which he was entitled." *Dog House Investments, LLC v. Teal Properties, Inc.*, 448 S.W.3d 905, 919 (Tenn. Ct. App. 2014). In awarding prejudgment interest, the trial court must consider the principles of equity and "whether the award of prejudgment interest is fair, given the particular circumstances of the case." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Tennessee courts have outlined several factors that may be considered in making this determination, including (1) whether the existence or amount of the obligation is certain or disputed on reasonable grounds; (2) whether the plaintiff unreasonably delayed filing suit; (3) whether the plaintiff delayed after filing suit; (4) whether the defendant had full access to and use of the money; and (5) whether the plaintiff has been otherwise compensated for the loss of the use of the funds. *See Myint*, 970 S.W.2d at 927; *Dog House Investments*, 448 S.W.3d at 919 (citing *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78,

---

[8] Defendants do not assert on appeal that this figure was without material evidence.

83 (Tenn. Ct. App. 2000)). Recognizing the harsh result if certainty in the amount of recovery is required for the award of prejudgment interest, however, the Tennessee Supreme Court has cautioned that

> The uncertainty of either the existence or amount of an obligation does not mandate a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable. The certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances.

*Myint*, 970 S.W.2d at 927–928. Thus, although the fact that "the existence or amount of an obligation is certain . . . will help support an award of prejudgment interest as a matter of equity," the fact that the existence or amount of the obligation is uncertain is not a complete bar to recovery of prejudgment interest. *Id.*

The trial court made the following findings of fact in support of its award of prejudgment interest:

> While the Defendant[s] did admit to several material factual matters in its pleadings and briefs, the [D]efendant[s] never admitted liability, until the trial. Thus the Court Orders that the plaintiff is entitled to prejudgment interest, from the date of the incident until the jury verdict. The Court will take into account that though it was certain that the defendant could be liable for some amount of compensatory damages, the amount was uncertain and both sides had reputable experts on the issue of damages. Therefore, the Court awards pre-judgment interest in the amount of 5% from the date of the incident.

Additionally, the trial court cited *Estate of Fetterman ex rel. Fetterman v. King*, 206 S.W.3d 436 (Tenn. Ct. App. 2006), as legal support for its decision.

In *Estate of Fetterman*, the trial court awarded plaintiff prejudgment interest of 10% per annum. *Id.* at 446. In evaluating this award, the Court of Appeals noted that there was "no doubt" that the plaintiff had a valid claim against the defendant, but the amount of the obligation was "uncertain to say the least[.]" *Id.* at 447. Moreover, the award by the trial court resulted in a windfall to the plaintiff, the contract upon which the dispute arose was unenforceable, and the litigation resulted in two trials and two appeals. *Id.* As such, the Court of Appeals concluded that while prejudgment interest was authorized, the rate was reduced to 5% per annum. *Id.* Other courts have affirmed prejudgment interest at rates less than the statutory maximum of 10%. *See Mabey v. Maggas*, No. M2006-02689-COA-R3-CV, 2007 WL 2713726, at *11 (Tenn. Ct. App. Sept. 18, 2007) (affirming prejudgment interest at a rate of 3%).

Here, we agree with Defendants that the amount of the damages incurred by Plaintiff was subject to considerable and reasonable dispute between the parties. Indeed, while Plaintiff asserted that the damages rose to nearly $400,000.00, not to mention punitive damages, Defendants contended that no compensable damage was actually done to the property. The jury came to the conclusion that the actual damages were somewhere in the middle. Still, there could be no reasonable dispute that Plaintiff's injury was the result of Defendants' conduct and instrumentality. In its brief, Defendants attempt to minimize the effect of this factor by pointing to inadmissible settlement negotiations as well as the fact that Defendants admitted liability prior to trial. The record reflects, however, that liability was only admitted immediately prior to trial.[9] Further, Defendants point to nothing in the record to suggest that Plaintiff engaged in delay tactics either prior to filing suit or after the complaint was filed.

"Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000). Here, Plaintiff was injured by Defendants' negligence, and Defendants refused to admit liability until the eve of trial. The amount of the damages that resulted from Defendants' negligence, however, and whether Defendants committed additional torts against Plaintiff were not certain. Given these considerations, neither party has shown that the trial court abused its discretion in awarding Plaintiff prejudgment interest but declining to award the statutory maximum. The trial court's award of prejudgment interest is therefore affirmed.

## CONCLUSION

The judgment of the Davidson County Circuit Court is affirmed, and this cause is remanded for all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are assessed to appellant, Twenty Holdings, LLC.

_____
J. STEVEN STAFFORD, JUDGE

---

[9] Indeed, the first citation to the record where Defendants assert that liability was admitted occurred on the second day of trial after jury selection.